## SCOTT *v.* DONALD.

## SCOTT *v.* DONALD.

## GARDNER *v.* DONALD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF SOUTH CAROLINA.

Nos. 411, 412, 413.   Argued October 21, 22. 1896. — Decided January 18, 1897.

Where a suit is brought against defendants who claim to act as officers of
a State and under color of an unconstitutional statute commit acts of
wrong and injury to the property of the plaintiff, to recover money or
property in their hands unlawfully taken by them in behalf of the State,
or for compensation for damages, such suit is not an action against the
State within the meaning of the Eleventh Amendment to the Constitution
of the United States.

Although the question of the jurisdiction of the court below has not been
certified to this court in the manner provided by the fifth section of the
judiciary act of March 3, 1891, yet, as the case is before it in a case in
which the law of a State is claimed to be in contravention of the Consti-
tution of the United States under another clause of that statute it has
jurisdiction of the entire case and of all questions involved in it.

Damages are the compensation which the law awards for an injury done;
and exemplary damages are allowable, in excess of the actual loss, where
a tort is aggravated by evil motive, actual malice, deliberate violence
or oppression.

The intentional, malicious and repeated interference by the defendants with
the exercise of personal rights and privileges secured to the plaintiffs by
the Constitution of the United States, as alleged in the complaint, con-
stitutes a wrong and injury not the subject of compensation by a mere
money standard, but fairly within the doctrine of the cases wherein ex-
emplary damages have been allowed, as those allegations of the com-
plaints, though denied in the answers, have been sustained.

The statute of South Carolina of January 2, 1895, entitled "an act to further
declare the law in reference to, and further regulate the use, sale, con-
sumption, transportation and disposition of alcoholic liquids or liquors
within the State of South Carolina, and to police the same," recognizes
liquors and wines as commodities which may be lawfully made, bought
and sold, and which must therefore be deemed to be the subject of foreign
and interstate commerce, and is an obstruction to and interference with
that commerce, and must, as to those of its provisions which affect the
plaintiffs, stand condemned.

That statute is not an inspection law, and is not within the scope of the act
August 8, 1890, c. 728.

Whether those provisions of the act which direct that so-called contraband liquors may be seized without warrant by any state constable, sheriff or policeman, while in transit or after arrival, whether in possession of a common carrier, depot agent, express agent or private person, and which subject common carriers to fine and imprisonment for carrying liquors in any package, cask, jug, box or other package, under any other than the proper name or brand known to the trade, and which forbid the bringing of any suit for damages alleged to arise by seizing and detention of liquors would be lawful in an inspection law otherwise valid, is not decided.

So far as these actions are concerned, the damages recovered were for acts committed under the alleged authority of the act of 1895, and cannot be affected by the provisions of the subsequent act of 1896, even if the invalidities of the former act were thereby remedied — a matter on which no opinion is expressed.

IN the Circuit Court of the United States for the District of South Carolina, in February, 1895, two suits at law were brought by James Donald against J. M. Scott, and one by Donald against Gardner etc., wherein plaintiff sought to recover damages caused by the action of the defendants, who were state constables of the State of South Carolina, in seizing and carrying away several packages of wines and liquors belonging to the plaintiffs, and, at the time of the seizure, in the possession of railroad companies which as common carriers had brought the packages within the State.

It appeared that one of the packages, consisting of a case of domestic California wine, came by rail from Savannah, Georgia, whither it had been imported by the plaintiff; another, consisting of a case of whiskey, in bottles, made in Maryland, and imported by the plaintiff by way of the Baltimore Steam Packet line; and another, consisting of one barrel of bottled beer, made at Rochester, New York, and imported by the plaintiff into the State of South Carolina by way of the Old Dominion Steamship line.

Demurrers to the several declarations or complaints were interposed and overruled. Thereupon issues of fact were joined, and, trial by jury having been duly waived, the causes were tried and determined by the court, and resulted in findings and judgments in favor of the said plaintiff for the sum of three hundred dollars and costs in each case, respec-

tively. Writs of error from this court were then sued out and allowed.

*Mr. William A. Barber*, Attorney General of the State of South Carolina, for plaintiffs in error.

I. The plaintiffs in error, as state constables, were authorized by the act generally known as the dispensary law to seize the liquors seized. See sections 43, 32, 29, 33, 1 and 25.

II. The dispensary act of South Carolina is the lawful exercise of the police power of the State and is not in conflict with Article 9 of the Constitution of the United States in so far as it prohibits citizens of the State from importing within the State alcoholic liquors for their own use and consumption. The sole question is whether so much of the dispensary law of South Carolina as prohibits the importation of alcoholic liquors from other States for personal use was enacted in the legitimate exercise of the police power of the State; and, if so, it is above the Constitution and acts of Congress, and no Federal question is presented.

This leads to the inquiry, What is the police power of a State?

This honorable court has said that the police power cannot be accurately defined; and, without attempting a definition, I would say it is that great attribute of sovereignty by which a State is justified in its self-protection and self-preservation; and it implies the use of the necessary means for the protection of the correlative and reciprocal rights of the sovereign and the citizen. The present measure of the power of a sovereign State is the full measure of its rights before it joined the federation, except in so far as the provisions of the Federal Constitution or its own people have modified it. We know that the State gave up to the Union the right to regulate commerce, tax imports, declare war, proclaim peace, emit bills of credit, coin money and operate the post office. But it gave up no right based upon those fundamental principles not laid down in the Federal Constitution, and which are necessary to the protection of itself, necessary to the safety, com-

fort and well-being of society, and necessary to the protection of its citizens against the evils of intemperance, pauperism and crime. The police power is among the reserved powers of the State.

For the views of this court see *New York* v. *Miln*, 11 Pet. 102; *Barbier* v. *Connolly*, 113 U. S. 27; *Stone* v. *Mississippi*, 108 U. S. 814; *In re Rahrer*, 140 U. S. 545; *Crowley* v. *Christensen*, 137 U. S. 86; *Slaughter House cases*, 16 Wall. 36; *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Foster* v. *Kansas*, 112 U. S. 201. In view of the principles laid down in these cases, there can be no doubt that the dispensary act is a police measure. In *Bartemeyer* v. *Iowa* it was held that a state law prohibiting the manufacture and sale of intoxicating liquors was not repugnant to the Constitution. In *Foster* v. *Kansas*, this doctrine was repeated.

In 1887, in the case of *Bowman* v. *Chicago & Northwestern Railway*, 125 U. S. 465, it was held that a law of Iowa forbidding the bringing into the State from other States of intoxicating liquors without a certificate, as therein required, was a regulation of commerce among the States, and was void as being repugnant to the Constitution, such statute not being an inspection law, or a quarantine law, or a sanitary measure, and therefore not a legitimate exercise of the police power of the State.

Then came the decision of *Leisy* v. *Hardin*, 135 U. S. 100, in which it was held that a party had the right under the Interstate Commerce Acts to import intoxicating liquor into the State, and the importer had the right to sell the imported liquor in the State so long as it remained in the original package.

This case induced the passage of the act of 1890.

In *In re Rahrer*, the constitutionality of that act was assailed, but it was sustained by the court.

That act is the controlling act now, and by it Congress has provided that upon the arrival of liquors within the State, they become subject to the police power of the State, to the same extent and in the same manner as though such liquors had been produced by the State.

While this act did not add to the police power of the State, it did give expression to the will of Congress that a State could control intoxicating liquors as articles of commerce. upon their arrival in the State, no matter where manufactured or from where imported, and Congress thus relinquished any power as to this article, which had been conferred by the Constitution of the United States, upon its arrival in such State.

But it is contended in this case that the dispensary law is in contravention of the Interstate Commerce Acts, because it discriminates against products of other States and against citizens of other States:

1. In that it allows dispensaries to sell intoxicating liquor, while citizens from other States are not allowed to send it into the State for sale:

2. In that it discriminates against intoxicating liquors, the product of other States, by prohibiting their introduction into the State for sale or use.

The act does authorize the sale of ales, wines and liquors by the State, and does prohibit all citizens of this State, as well as citizens of other States, from bringing them into the State for sale or use.

The act does allow the commissioner for the State to buy liquors outside the State, and does prohibit other persons from buying and bringing them into the State.

But we maintain that this is a legitimate exercise of the police power, and does not in any way regulate commerce between the States, and is not a discrimination against products or citizens of other States. It places citizens and products of this State on an equal footing with those of other States. Domestic liquors and foreign liquors are alike subject to the provisions of the law. While citizens of other States are forbidden to sell liquors within this State, the prohibition extends to citizens of this State as well; and while a citizen is prohibited from importing liquor, he is likewise prohibited from purchasing within the State any liquors not previously analyzed by the chemist and sold by the proper officers of the State.

The act may remotely affect commerce, but it does not interfere with or regulate it by discrimination or otherwise. *Welton* v. *Missouri*, 91 U. S. 275; *Brown* v. *Houston*, 114 U. S. 622; *Walling* v. *Michigan*, 116 U. S. 446; *Mobile County* v. *Kimball*, 102 U. S. 691; *Woodruff* v. *Parham*, 8 Wall. 123; *Machine Co.* v. *Gage*, 100 U. S. 676; *Hinson* v. *Lott*, 8 Wall. 148; *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Beer Company* v. *Massachusetts*, 97 U. S. 25; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Plumley* v. *Massachusetts*, 155 U. S. 461; *Sherlock* v. *Alling*, 93 U. S. 99; *Leisy* v. *Hardin*, 135 U. S. 100; *Pittsburg & Southern Coal Co.* v. *Louisiana*, 156 U. S. 590; *Pittsburg & Southern Coal Co.* v. *Bates*, 156 U. S. 577; *Hennington* v. *Georgia*, 163 U. S. 299; *Western Union Tel. Co.* v. *James*, 162 U. S. 650.

In the light of these cases, we submit that the dispensary law is a legitimate exercise of the police power.

We further submit:

1. The law does not discriminate against liquors the products of other States, but makes the liquors produced in this State, as well as those imported, subject to it.

Under the act of 1890, liquors imported from other States upon their arrival become subject to the police power, and if liquors manufactured in the State are put upon the same footing there is no discrimination against them on account of their extra-state origin.

2. The law does not discriminate against the citizens of other States. Citizens of this State are put on an equality with them. None of them can sell intoxicating liquors. It is true the State sells, but none of her citizens can do so.

3. The law does require her citizens to buy from dispensaries, but no citizen from other States is inhibited from doing so.

There is no discrimination in the law against citizens or products of other States, as such, and because they are citizens and products of other States; but the object is to protect the public morals, public health and public safety. It is not the intention of the law to regulate interstate commerce, but to protect the people of the State.

But it may be said that while the State sells liquors to her own citizens she cannot prohibit the introduction of liquors from other States upon the ground that they are deleterious and for the purpose of protecting her citizens from fraud and deception.

The provision in the act requiring all liquors sold by the dispensaries to undergo an analysis and their purity to be certified sufficiently answers this objection.

Then we maintain that the complainant is denied no right, privilege or immunity secured by the Constitution or laws of the United States, and no Federal question arises in this action. The simple averment in the bill that a Federal question is presented is not sufficient. *New Orleans* v. *New Orleans Water Works*, 142 U. S. 79; *Hamblin* v. *Western Land Co.*, 147 U. S. 531.

The intention of the general assembly, as is evident from the general scope and detailed provisions of the dispensary act, was to protect the public health, public morals and public peace of the State, and not to burden or regulate interstate commerce. Some of the late cases indicate a modification by this court of views expressed in earlier cases as to the extent to which state legislatures may enact police regulations. Changed conditions, industrial development and more enlightened thought in this country have necessitated progressive exercise of the police power in the solution of social and governmental problems. The dispensary act is an example of legislation in this direction. It is difficult to conceive of any law enacted in exercise of the police power that does not affect interstate commerce, and in every instance the question is, does it affect commerce to the extent of its regulation? We repeat, the dispensary act is not directed against commerce or any of its regulations, but relates to the rights, duties and liabilities of citizens, and only incidentally and remotely affects the operations of commerce. Such laws have uniformly been held valid, and upon this principle we seek to uphold the act.

III. The executive officers of the State of South Carolina are equally as anxious as the complainant herein to have the

legal issues raised in this cause finally adjudicated by this honorable court. With a view to securing a final decision, and feeling that it is just to the court as well as to parties litigant that the present method of operating the South Carolina dispensary should be fully understood, a suggestion has been submitted calling the attention of the court to the recent enactment of the general assembly of South Carolina relative to the dispensary. The dispensary system, as a solution of the liquor question, is yet in its infancy, and the state legislature in passing the act of 1896 endeavored to perfect the business details of the institution. At the same time the inspection feature of the law was materially changed. It is to this alteration particularly that we invite attention, and respectfully ask that the court, if it deem proper, consider its provisions in this respect as affecting the act approved January 2, 1895, and the order of injunction in this case. Without discussing in detail those features of the act, we submit that, as an inspection law, it is subject to the following principles:

1. That the States, in the exercise of the police power, may pass inspection laws which are not in their express words or operation a burden upon interstate commerce, by discriminating against the products or citizens of other States, and which operate equally upon products and citizens of the States themselves and citizens and products of other States. *Robbins* v. *Shelby Taxing District,* 120 U. S. 489; *Gibbons* v. *Ogden,* 9 Wheat. 123; *Brown* v. *Maryland,* 12 Wheat. 419; *Voight* v. *Wright,* 141 U. S. 62; *Crutcher* v. *Kentucky,* 111 U. S. 59. *Brimmer* v. *Rebman,* 138 U. S. 78; *Smith* v. *Alabama,* 124 U. S. 465; *Dent* v. *West Virginia,* 129 U. S. 114. *Plumley* v. *Massachusetts,* 155 U. S. 472.

2. That the legislature is the judge of what is against the public health, morals and safety of the State, and when in the exercise of the police power it enacts a law declaring the use of any article to be against them, it will not conflict with the ninth article of the Constitution of the United States when it discriminates against the citizens and products of other States. *Railroad Co.* v. *Husen,* 95 U. S. 465; *Crowley* v.

*Christensen*, 137 U. S. 86; *Plumley* v. *Massachusetts*, 155 U. S. 461.

3. That the State, in the exercise of the police power, can enact laws protecting the people from the consequences of ignorance, incapacity, fraud, disease, poverty and crime. *Dent* v. *West Virginia*, 129 U. S. 114; *Plumley* v. *Massachusetts*, 155 U. S. 461; *Minnesota* v. *Barber*, 136 U. S. 313; *Brimmer* v. *Rebman*, 138 U. S. 78.

*Mr. J. P. Kennedy Bryan* for defendants in error.

MR. JUSTICE SHIRAS delivered the opinion of the court.

The records in these cases present the question of the validity, under the Constitution of the United States, of the act of the general assembly of the State of South Carolina, approved January 2, 1895, generally known as the state dispensary law, and a copy of which is in the margin.[1]

---

[1] AN ACT to further declare the law in reference to, and further regulate the use, sale, consumption, transportation and disposition of alcoholic liquids or liquors within the State of South Carolina; and to police the same.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same,* That the manufacture, sale, barter or exchange, receipt, acceptance, delivery, storing and keeping in possession, within this State, of any spirituous, malt, vinous, fermented, brewed (whether lager or rice beer) or other liquors, or any compound or mixture thereof, by whatever name called or known, which contains alcohol and is used as a beverage by any person, firm or corporation; the transportation, removal, the taking from the depot or other place by consignee or other person, or the payment of freight or express or other charges, by any person, firm, association or corporation, upon any spirituous, malt, vinous, fermented, brewed (whether lager, rice or other beer) or other liquor, or any compound or mixture thereof, by whatever name called or known, which contains alcohol and is used as a beverage, except as is hereinafter provided, is hereby prohibited, under a penalty of not less than three (3) nor more than twelve (12) months at hard labor in the state penitentiary, or pay a fine of not less than one hundred dollars nor more than five hundred dollars or both fine and imprisonment, in the discretion of the court, for each offence. All such liquors, except when bought from a state officer author-

A preliminary question is raised by the proposition that these are in fact suits against the State of South Carolina, and forbidden by the Eleventh Amendment. This question is

---

ized to sell the same, or in possession of one, are declared to be contraband and against the morals, good health and safety of the State, and may be seized wherever found, without warrant, and turned over to the state commissioner.,

Sec. 2. The governor, the secretary of State and the comptroller general shall *ex officio* constitute the state board of control to carry out the provisions of this act. The state board of control shall elect a clerk, who shall hold his office during the pleasure of the board, and shall receive as compensation for his services a salary of eight hundred dollars per annum.

Sec. 3. That the state board of control shall, at the expiration of the term of the present commissioner, and at the expiration of every two years thereafter, appoint a commissioner, which appointment shall be submitted to the senate at its next session for its approval; said commissioner shall be believed by the state board of control to be an abstainer from intoxicants, and shall, under such rules and regulations as may be made by the state board of control, purchase all intoxicating liquors for lawful sale in this State, and furnish the same to such persons as may be designated as dispensers thereof, to be sold as hereafter prescribed in this act. Said commissioner shall reside, and have his place of business, in the city of Columbia, in this State, and hold his office two years from his appointment and until another be appointed in his stead. He shall be subject to removal for cause by the state board of control. He shall qualify and be commissioned the same as other state officers, and shall receive an annual salary of twenty-five hundred dollars, payable at the same time and in the same manner as is provided for the payment of the salaries of state officers. He shall be allowed a book-keeper, who shall be paid in the same manner a salary of twelve hundred dollars; and such other assistants as in the opinion of the board of control may be deemed necessary. He shall not sell to the county dispensers any intoxicating or fermented liquors except such as have been tested by the chemist of the South Carolina college and dec ired to be pure: *Provided,* That said board of control shall have authority to appoint such assistants as they may find necessary to assist the chemist of the South Carolina college in making the analyses required by this act; and the said board of control may fix such reasonable compensation, if any, as they may deem proper for the services rendered by such chemist or such assistants. The state commissioner shall deposit all amounts received by him from sales to county dispensers or others with the treasurer of the State under such rules as may be made by the state board of control to insure the faithful return of the same, and the state treasurer shall keep a separate account with said fund, from which the commissioner shall draw from time to time, upon warrants duly approved by the chairman of said board, the amount necessary to pay the expenses incurred in conducting

sufficiently disposed of by referring to the late case of *In re Tyler*, 149 U. S. 164, where the conclusion of numerous previous cases was stated to be that where a suit is brought

---

the business. All rules and regulations governing the said commissioner in the purchase of intoxicating liquors or in the performance of any of the duties of his office, where the same are not provided for by law, shall be prescribed by the state board of control. He shall, before entering upon the duties of his office, execute a bond to the state treasurer, with sufficient sureties, to be approved by the attorney general, in the penal sum of twenty-five thousand dollars, for the faithful performance of the duties of his office. In all purchases or sales of intoxicating liquors made by said commissioner, as contemplated in this act, the commissioner shall cause a certificate to be attached to each and every package containing said liquors when the same is shipped to him from the place of purchase or by him to the county dispensaries, certified by his official signature and seal, which certificate shall state that liquors contained in said packages have been purchased by him for sale within the State of South Carolina, or to be shipped out of the State, under the laws of said State; and without such certificate any package containing liquors which shall be shipped out of the State, or shipped from place to place within the State, or delivered to the consignee by any railroad, express company or other common carriers, or be found in the possession of any common carrier, shall be regarded as contraband and may be seized without warrant for confiscation, and such common carrier shall be liable to a penalty of five hundred dollars for each offence, to be recovered against said common carrier in any court of competent jurisdiction by summons and complaint, proceedings to be instituted by the solicitor of any circuit with whom evidence may be lodged by any officer or citizen having knowledge or information of the violation; and any person attaching or using such certificate without the authority of the commissioner, or any counterfeit certificate for the purpose of securing the transportation of any intoxicating liquors out of or within this State, in violation of law, shall, upon conviction thereof, be punished by a fine of not less than five hundred dollars and imprisonment in the penitentiary for not less than one year for each offence.

SEC. 4. Said commissioner shall make a printed monthly statement, under oath, of all liquors sold by him, enumerating the different kinds and quality of each kind, the price paid, and the terms of payment and to whom sold; also the names of the parties from whom the liquor was purchased and their places of business and dates of purchase, which statement shall be filed with the state board of control.

SEC. 5. The state commissioner shall, before shipping any liquors to dispensers, except lager beer, cause the same to be put into packages of not less than one half pint nor more than five gallons, and securely seal the same, and it shall be unlawful for the dispenser to break any of such packages or open the same for any reason whatsoever. He shall sell by the

against defendants who claim to act as officers of a State, and, under color of an unconstitutional statute, commit acts of wrong and injury to the property of the plaintiff, to recover

---

package only, and no person shall open the same on the premises : *Provided,* This section shall not apply to malt liquors shipped in cases or bottles thereof shipped in barrels ; and such malt liquors may be sold by the county dispenser in such quantities, of not less than one pint; as he may see proper : *Provided,* The same shall not be drunk on the premises: Dispensers shall open their places of business and sell only in the daytime, under such rules as may be made by the state board of control, or by the county board of control with approval of the state board of control.

SEC. 6. It shall be the duty of the state board of control to appoint a county board of control, composed of the county supervisor *ex officio* and two other persons believed by the said board not to be addicted to the use of intoxicating liquors. The two persons so appointed shall hold their office for a term of two years, and until their successors are appointed, and shall be subject to removal for cause by the state board of control. Said county board of control shall make such rules as will be conducive to the best management of the sale of intoxicating liquors in their respective counties: *Provided,* All such rules shall be submitted to the state board and approved by them before adoption. The members of the county board of control shall qualify and be commissioned as are other county officers, without fees therefor.

SEC. 7. Applications for positions of county dispenser shall be by petition, signed and sworn to by the applicant, and filed with the county board of control at least ten days before the meeting at which the application is to be considered, which petition shall state the applicant's name, place of residence, in what business engaged, and in what business he has been engaged two years previous to filing petition; that he is a citizen of the United States and of South Carolina; that he has never been adjudged guilty of violating the law relating to intoxicating liquors, and is not a keeper of a restaurant or place of public amusement, and that he is not addicted to the use of intoxicating liquors as a beverage. This permit or renewal thereof shall issue only on condition that the applicant shall execute to the county treasurer a bond in the penal sum of three thousand dollars, with good and sufficient sureties, conditioned that he will well and truly obey the laws of the State of South Carolina, now or hereafter in force, in relation to the sale of intoxicating liquors, that he will pay all fines, penalties, damages and costs that may be assessed, or recorded against him, for violations of such laws during the term for which said permit or renewal is granted, and will not sell intoxicating liquors under his permit at a price other than that fixed by state board of control. Said bond shall be for the use of the county or any person or persons who may be damaged or injured by reason of any violation on the part of the obligor of the law relating to intoxicating liquors purchased or sold during the term for

money or property in their hands unlawfully taken by them in behalf of the State, or for compensation for damages, such suit is not, within the meaning of the amendment, an action against the State.

which said permit, or the renewal thereof, is granted. The said bond shall be deposited with the county treasurer, and suit thereon shall be brought at any time by the solicitor or any person for whose benefit the same is given; and in case the conditions thereof, or any of them, shall be violated, the principal and sureties thereon shall also be jointly and severally liable for all civil damages, costs and judgments that may be obtained against the principal in any civil action brought by wife, child, parent, guardian, employer or other person under the provision of the law. All other moneys collected for breaches of such bond shall go into the county treasury. Said bond shall be approved by the county board of control under the rules and laws applicable to the approval of the official bonds.

Sec. 8. There may be one or more county dispensers appointed for each county, the place of business of each of whom shall be designated by the county board, but the state board must give consent before more than one dispenser can be appointed in any county; and when the county board designates a locality for a dispensary, ten days' public notice of which shall be given, it shall be competent for a majority of the voters of the township in which such dispensary is to be located to prevent its location in such township by signing a petition or petitions, addressed to the county board, requesting that no dispensary be established in that township, whereupon some other place may be designated. The county board may in its discretion locate a dispensary elsewhere than in an incorporated town in the counties of Beaufort and Horry and no others, except such as are authorized by special act of the general assembly: *Provided, however,* That any county, town or city wherein the sale of alcoholic liquors was prohibited by law prior to July 1, 1893, may secure the establishment of a dispensary within its borders in the following manner: Upon petition signed by one fourth of the qualified voters of such county, town or city wishing a dispensary therein being filed with the county supervisor or town or city council, respectively, they shall order an election submitting the question of dispensary or no dispensary to the qualified voters of such county, town or city, and shall prescribe the rules, regulations, returns, ballots and notice of such election and shall declare the result; and if a majority of the ballots cast be found and declared to be for a dispensary; then a dispensary may be established in said county, town or city: *Provided,* That dispensaries may be established in the counties of Williamsburg, Pickens and Marion and at Seneca and other towns now incorporated in Oconee County without such election on compliance with the other requirements of this act: *Provided,* That nothing in this act contained shall be so construed as to prohibit persons resident in counties which shall elect to have no dispensary from procuring liquors

It is also argued that the amounts involved in the respective suits were not sufficient to give jurisdiction to the Circuit Court. Although the question of the jurisdiction of the court below has not been certified to us in the manner provided by

---

from dispensaries in other counties, or county dispensers from shipping same to their places of residence under proper labels or certificates: *Provided, further,* That nothing in this act shall be construed to repeal an act entitled "An act to allow the opening of dispensaries in Pickens and Oconee Counties," approved December 18, 1894.

SEC. 9. If the application for the position of dispenser be granted, it shall not issue until the applicant shall make and subscribe on oath, before some officer authorized by law to administer oaths, which shall be endorsed upon the bond, to the effect and tenor following: "I, ————, do solemnly swear (or affirm) that I will well and truly perform all and singular the condition of the within bond, and keep and perform the trusts confided in me to purchase, keep and sell intoxicating liquors. I will not sell, give or furnish to any person any intoxicating liquors otherwise than is provided by law, and especially I will not sell or furnish intoxicating liquors to any minor, intoxicated person or persons who are in the habit of becoming intoxicated, and I will make true, full and accurate returns to the county board of control on the first Monday of each month of all certificates and requests made to or received by me, as required by law, during the preceding month; and such returns shall show every sale and delivery of such liquors made by me or for me during the month embraced therein, and the true signature to every request received and granted; and such returns shall show all the liquors sold or delivered to any and every person as returned." Upon taking said oath and filing bond as hereinbefore provided, the county board of control shall issue to him a permit authorizing him to keep and sell intoxicating liquors as in this act provided, and every permit so granted shall specify the building, giving the street and number or location, in which intoxicating liquors may be sold by virtue of the same, and the length of time in which the same shall be in force, which in no case shall exceed twelve months. Permits granted under this act shall be deemed trusts reposed in the recipients thereof, not as a matter of right, but of confidence, and may be revoked upon sufficient showing by order of the county board of control; and upon the removal of any county dispenser, or upon demand of the county board of control, he shall immediately turn over to the county board of control all liquors and other property in his possession belonging to the State or county. Said county board of control shall be charged with the duty of prosecuting the county dispenser or any of his employés who may violate any of the provisions of this act. On the death, resignation or removal of a county dispenser or expiration of his term of office, the county board shall appoint his successor.

SEC. 10. The county board of control shall use as their office the office of the county supervisor of their county, and shall elect one of their num-

the fifth section of the judiciary act of March 3, 1891, yet, as the case is before us, in a case in which the law of a State is claimed to be in contravention of the Constitution of the

---

ber as chairman and another as clerk of the said county board of control. The county board shall preserve as a part of the records and files of their office all petitions, bonds and other papers pertaining to the granting or revocation of permits, and keep suitable books in which bonds and permits shall be recorded. The books shall be furnished by the county like other public records. The county board of control shall designate or provide a suitable place in which to sell the liquors. The members of the county board of control shall meet once a month or oftener, on the call of the chairman, and each member of the board shall receive a per diem of two dollars and five cents mileage each way, but they shall not receive compensation for more than thirty days in any one year except in the county of Charleston, where they shall not receive compensation for more than sixty days in any one year, and in Barnwell County not more than fifty days in any one year. They shall, upon the approval of the state board of control, employ such assistants for the county dispenser as may be necessary. The dispenser and his assistants shall receive such compensation as the state board of control may determine. All profits, after paying all expenses of the county dispensary, shall be paid, one half to the county treasury and one half to the municipal corporation in which it may be located, such settlements to be made quarterly: *Provided*, That if the authorities of any town or city, in the judgment of the state board of control, do not enforce this law, the state board may withhold the part going to the said town or city and use it to pay state constables or else turn it into the county treasury. All moneys received by the county dispenser belonging to the State shall be forwarded on Monday of each week to the state commissioner, and at the same time the county dispenser shall forward to the state board of control a duplicate statement of the remittance so made to the state commissioner. On the same day of each week the county dispenser shall deposit with the county treasurer the portion of all the moneys received by him belonging to the county and to the municipal authorities in which the dispensary is located. The county treasurer shall give his receipt therefor and hold the same until the quarterly settlement hereinbefore provided for is had. The quarterly settlement herein provided for shall be made on the fourth Monday in the months of December, March, June and September in each year. Such settlement shall be made in the presence of the county auditor, who shall make a memorandum of the items thereof, and forward the same to the state board of control. The mayor or intendant of the city or town in which the dispensary is located shall also attend such settlement: *Provided*, That in counties where dispensaries other than incorporated cities or towns, the county shall get all profits that would otherwise go to such cities and towns.

SEC. 11. Before selling or delivering any intoxicating liquors to any

United States, under another clause of that statute, we have jurisdiction of the entire case and of all questions involved in it. *Horner* v. *United States,* 143 U. S. 570; *Carey* v. *Houston*

person, a request must be presented to the county dispenser, printed or written in ink, dated of the true date, stating that he or she is of age and the residence of the signer, for whom or whose use it is required, the quantity and kind required, and his or her true name, and the request shall be signed by the applicant in his own true name and signature, attested by the county dispenser or his clerk who receives and files the request. But the request shall be refused if the county dispenser filling it personally knows the person applying is a minor, that he is intoxicated, or that he is in the habit of using intoxicating liquors to an excess; or if the applicant is not so personally known to said county dispenser, before filing said order or delivering said liquor, he shall require the statement of a reliable and trustworthy person of good character and habits, known personally to him, that the applicant is not a minor, and is not in the habit of using intoxicating liquors to excess.

SEC. 12. Requests for purchase of liquor shall be made upon blanks furnished by the county auditor, in packages of one hundred each, to the county dispensers, from time to time as the same shall be needed, and shall be numbered consecutively by the auditor. The blanks aforesaid shall be furnished to the county auditor by the state board of control, in uniform books, like bank checks, and the date of delivery shall be endorsed by the county auditor on each book and receipt taken therefor and preserved in his office. The dispenser shall preserve the application in the original form and book, except the filing of the blanks therein, until returned to the county auditor. When return thereof is made the county auditor shall endorse thereon the date of return, and file and preserve the same, to be used in the quarterly settlements between such dispenser and the county treasurer. All unused or mutilated blanks shall be returned or accounted for before other blanks are issued to such county dispenser.

SEC. 13. On or before the tenth day of each month each dispenser shall make full returns to the county auditors of all requests filed by him and his clerks during the preceding month upon blanks to be furnished by the state board of control for that purpose, and accompany the same with an oath, duly taken and subscribed before the county auditor or notary public, which shall be in the following form, to wit: "I, ———, being duly sworn, state on oath that the requests for liquors herewith returned are all that were received and filled at my place of business under my permit during the month of ——, 189–; that I have carefully preserved the same, and that they were filled up, signed and attested at the date shown thereon, as provided by law; that said requests were filled by delivering the quantity and kind of liquors required, and that no liquors have been sold or dispensed under my permit during said month except as shown by the requests herewith returned; and that I have faithfully observed and complied with

*&. Texas Central Railway,* 150 U. S. 170, 181; *Chappell* v.
*United States,* 160 U. S. 499.

Our inspection of these records does not satisfy us that this
objection is well founded.    The declaration· or complaint

---

the provisions of my bond and oath taken by me, thereon endorsed, and
with all the laws relating to my duties in the premises."

SEC. 14. Upon failure of any dispenser to make returns to the auditor
as herein required, it shall be the duty of said auditor to report such failure
to the state.board of control, and the said state board of control shall
immediately order the county board to summon said delinquent dispenser
to appear before them and show cause why his permit should not be
revoked; and if the cause shall not be shown to the satisfaction of the
county board of control, they shall immediately annul said permit and give
public notice thereof; and the circuit solicitor shall proceed to enforce the
penalties prescribed in this act for such violation against said county. dis-
penser at the next succeeding term of court in the county in which such
permit is held; and any dispenser who shall sell or dispose of any intoxi-
cating liquors after his permit shall have been revoked shall, upon conviction
thereof, be fined not less than five hundred (500) dollars and be imprisoned
for six months.   If any dispenser or his clerk shall purchase any intoxicating
liquors from any other person except the state commissioner, or if he, or
they, or any person or persons in his or their employ, or by his or their di-
rection, shall sell or offer for sale any liquors other than such as have been
purchased from the state commissioner, or shall adulterate, or cause to be
adulterated, any intoxicating, spirituous or malt liquors which he or they
may keep for sale under this act, by mixing with same coloring matter or
any drug or ingredient whatever, or shall mix the same with other liquors of
different kind or quality, or with water, or shall sell or expose for sale such
liquors so adulterated, knowing it to be such, or shall change the label upon
any box, bottle or package, he or they shall be guilty of a misdemeanor and
be fined in a sum of not less than two hundred dollars or imprisonment for
not less than six months.   If any county dispenser shall misappropriate,
misuse or otherwise wrongfully dispose of any moneys or other property
belonging to the State, county, .or municipality, he shall, upon conviction,
be punished as in case of breach of trust with fraudulent intent.    .

SEC. 15. No person, firm, association or corporation shall manufacture .
for sale, or keep for sale, exchange, barter or dispense any liquors contain-
ing alcohol, for any purpose whatsoever, otherwise than is provided in this
act.    Any person, firm, association or corporation desiring or intending to
manufacture or distill any liquors containing alcohol within this State shall
first obtain from the state.board of control a permit or license so to do, and
it shall be unlawful for any such person, firm, association or corporation to
manufacture or distill any liquors containing alcohol within this State with-
out having such permit or license.    Any violations of the terms of the
permit or license shall authorize and warrant the seizure of the product on

alleges in each case that the plaintiff has been injured and damaged in the sum of six thousand dollars and demands judgment for that amount. It is urged that, as the value of the goods and chattels taken was alleged and shown to be but

hand at any distillery or place where liquors containing alcohol are manufactured: *Provided*, The United States has no lien or claim upon the same. And in the application for a permit or license to manufacture liquors containing alcohol, the applicant shall give the State full power, upon any violation of this act, to seize and take possession of any product on hand at the distillery or place where such applicant shall manufacture such liquors, and shall authorize the State to pay the United States government tax upon the same if unpaid, and to dispose thereof as provided herein for contraband goods. Dispensers as herein provided shall alone be authorized to sell and dispense liquors containing alcohol, and all permits must be procured by such dispensers as herein provided from the county board of control: *Provided*, That the manufacturers of distilled, malt or vinous liquors who are doing business in the State shall be allowed to sell to no person in this State except the state commissioner and to parties outside the State, and the state commissioner shall purchase his supplies from the brewers and distillers in this State when their product reaches the standard required by this act: *Provided*, Such supplies can be purchased as cheaply from such brewers and distillers in this State as elsewhere: *And provided further*, That the state commissioner shall have the right, and he is hereby empowered, to purchase malt liquors from breweries of this State, and also from breweries outside of this State, who may have agents representing them in this State. Every package, barrel or bottle of such liquor shipped beyond the limits of this State shall have thereon the certificate of the state commissioner allowing same, otherwise it shall be liable to confiscation, and the railroad carrying it shall be punished as in section three: *And provided*, That any person shall have the right to make wine for his or her own use from grapes or other fruits. The inspector appointed by the state board of control, as herein provided, shall have the right to enter and examine, at any and all times not forbidden by the United States laws, any distillery, brewery or place where liquors containing alcohol are manufactured within this State. Any manufacturer, distiller or brewer who may refuse to allow the inspector to enter and examine his place of business and its appurtenances at such times as the inspector may deem proper shall forfeit his permit or license.

SEC. 16. Every dispenser shall keep a strict account of all liquors received by him from the state commissioner in a book kept for that purpose, which shall be subject at all times to the inspection of the circuit solicitor, any peace officer or grand juror of the county, or of any other citizen, and such book shall show the amount and kind of liquors procured, the date of receipt and amount sold, and the amount on hand of each kind for each month. Such book shall be produced by the party keeping the

comparatively a few dollars, and as the recovery in each case was only in the sum of three hundred dollars, we are obliged to infer that the damages alleged and demanded were without

---

same, to be used as evidence on trial of any prosecution against him on notice duly served that the same will be required as evidence.

SEC. 17. The payment of the United States special tax as a liquor seller, or notice of any kind in any place of resort, or in any store or shop indicating that alcoholic liquors are there sold, kept or given away, shall be held to be *prima facie* evidence that the person or persons paying said tax and the parties displaying such notices are acting in violation of this act; and unless said person or parties are selling under permit as prescribed by this act they shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment for a term of not less than three months nor more than twelve months. Conviction in the United States courts of illicit sales of liquor shall be taken as *prima facie* evidence of violation of the provisions of this act, and any distiller or manufacturer of liquors containing alcohol so convicted in the United States courts shall, by reason of such conviction, forfeit the permit or license granted him by the state board of control in addition to the other penalties herein provided.

SEC. 18. Licensed druggists conducting drug stores and manufacturers of proprietary medicines are hereby authorized to purchase of dispensers of the counties of their residence intoxicating liquors (not including malt) for the purpose of compounding medicines, tinctures and extracts that cannot be used as a beverage. The dispensers shall not charge such licensed druggists more than ten per cent net profit for liquors so sold. Such purchaser shall keep a record of the uses to which the same are devoted, giving the kind and quantity so used, and quarterly they shall make and file with the county auditor and with the county board of control sworn reports, giving a full and true statement of the quantity and kinds of such liquors purchased and used, the uses to which the same have been devoted, and giving the name of the dispenser from whom the same was purchased, and the dates and quantities so purchased, together with an invoice of each kind still in stock and kept for such compoundings. If said licensed druggist shall sell, barter, give away, or exchange or in any manner dispose of said liquors for any purpose other than authorized by this section, he shall upon conviction forfeit his license and be liable to all penalties, prosecutions and proceedings at law and in equity provided against persons selling without permit, and upon such conviction the clerk of the court shall, within ten days after such judgment or order, transmit to the board of pharmaceutical examiners the certified record thereof, upon receipt of which the said board shall strike the name of the said druggist from the list of pharmacists and revoke his certificate: *Provided*, That nothing herein contained shall be construed to authorize the manufacture or sale of any preparation or compound, under any name, form or device, which may be used as a beverage which is intoxicating in its character: *And provided*

just foundation, and in the nature of a fraud upon the jurisdiction of the court.

The declarations contain allegations which, if true, bring

---

*further*, That the state commissioner shall be authorized to sell to manufacturing chemists and wholesale druggists alcohol by the barrel at cost.

SEC. 19. If any person shall make any false or fictitious signature or sign any name other than his or her own to any paper required to be signed by this act, without being authorized so to do, or make any false statement in any paper, request or application signed to procure liquors under this act, the person so offending shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than twenty-five dollars, or be imprisoned not more than thirty days. .

SEC. 20. If any dispenser, or his clerk, shall make false oath touching any matter required to be sworn to under the provisions of this act, the person so offending shall, upon conviction, be punished as provided by law for perjury. If any county dispenser shall purchase or procure any intoxicating liquors from other person than the state commissioner, or make any false return to the county auditor, or use any request for liquors for more than one sale, in any such case he shall be deemed guilty of a misdemeanor, and upon conviction, be punished by a fine of five hundred dollars or six months' imprisonment. . .

SEC. 21. Every person who shall directly or indirectly keep or maintain by himself, or by associating or combining with others, or who shall in any manner aid, assist or abet in keeping or maintaining any club room or other place in which any intoxicating liquors are received or kept for use, barter or sale as a beverage, or for distribution or division among the members of any club or association by any means whatever, and every person who shall receive, barter, sell, assist or abet another in receiving, bartering or selling, any alcoholic liquors so received or kept, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment for a term of not less than three months nor more than twelve months: *Provided,* That the state board of control shall have the power, upon a proper showing and under such rules as they may adopt, to exempt hotels where tourists or health seekers resort from being considered nuisances or as violating this act by reason of any manager of such hotels dispensing liquors bought from the dispensary, by the bottle, either night or day, but before any such exemption shall be granted the state board of control shall require the manager of such hotel to give a good and sufficient bond, in the penal sum of three thousand dollars, conditioned for the observance of all the rules, regulations and restrictions prescribed and imposed by the said board and with all the requirements of this act, and it shall be lawful for any constable or officer thus employed under this act to enter such hotel and search it at any time, day or night, without a warrant, for contraband liquors.

the cases within the well-settled doctrine that exemplary damages may in certain cases be assessed. After alleging that the plaintiff, in importing for his own use the articles men-

---

SEC. 22. All places where alcoholic liquors are sold, bartered or given away in violation of this act, or where persons are permitted to resort for the purpose of drinking alcoholic liquors as a beverage, or where alcoholic liquors are kept for sale, barter or delivery in violation of this act, are hereby declared to be common nuisances, and any person may go before any trial justice in the county and swear out an arrest warrant on personal knowledge or on information and belief, charging said nuisance, giving the names of witnesses against the keeper or manager of such place and his aids and assistants, if any, and such trial justice shall direct such arrest warrant either to the sheriff of the county or to any special constable, commanding said defendant to be arrested and brought before him to be dealt with according to law, and at the same time shall issue a search warrant in which the premises in question shall be particularly described, commanding such sheriff or constable to thoroughly search the premises in question and to seize all alcoholic liquors found thereon, and dispose of them as provided in section 33, and to seize all vessels, bar fixtures, screens, bottles, glasses and appurtenances apparently used or suitable for use in retailing liquors, to make a complete inventory thereof, and deposit the same with the sheriff. That under the arrest warrant the defendant shall be arrested and brought before such trial justice, and the case shall be disposed of as in case of other crimes beyond his jurisdiction, except that when he commits or binds over the parties for trial to the next term of court of general sessions for the county, he shall make out every paper in the case in duplicate and file one with the clerk of the court for the county, and immediately transmit the other to the solicitor of the circuit, whereupon said solicitor shall at once apply to the circuit judge at chambers within that circuit for an order restraining the defendants, their servants or agents, from keeping, receiving, bartering, selling or giving away any alcoholic liquors until the further order of the court. Such circuit judge is hereby authorized, empowered and required to grant the said restraining order without requiring a bond or undertaking upon the hearing or receipt by him of said papers from the court of the said trial justice by the hands of the solicitor; and any violation of said restraining order before the trial of the case shall be deemed a contempt of court and punished as such by said judge or court, or any other circuit judge, as for the violation of an order of injunction. Upon conviction of said defendants of maintaining said nuisance at the trial, they or any of them shall be deemed guilty of a misdemeanor, punishable by imprisonment in the state penitentiary for a term of not less than three months, or a fine of not less than two hundred dollars, or by both, in the discretion of the court, and the restraining order shall be made perpetual. The articles covered by the inventory, which were retained by the sheriff, shall be forfeited to the State and sold and the net proceeds sent to the state com-

tioned, were in the exercise of his legal rights guaranteed by the Constitution of the United States, it is averred, in the several declarations, that the defendants were notified that

---

missioner, and the sheriff shall forthwith proceed to dispose of the alcoholic liquors covered by said inventory as provided for in this act as when other liquors are seized. The finding of such alcoholic liquors on such premises, with satisfactory evidence that the same was being disposed of contrary to this act,. shall be *prima facie* evidence of the nuisance complained of. Liquors seized as hereinbefore provided, and the vessels containing them, shall not be taken from the custody of the officers in possession of the same by any writ of replevin or other process while the proceedings herein provided. are pending. No suit shall lie for damages alleged to arise by seizure and detention of liquors under this act. Any person violating the terms of any restraining order granted in such proceedings shall be punished for contempt by a fine of not less than two hundred dollars nor more than one thousand dollars, and by imprisonment in the state penitentiary not less than ninety days nor more than one year. In contempt proceedings arising out of the violation of any injunction granted under the provisions of this act, the court, or, in vacation, the judge thereof, shall have power to try summarily and punish the party or parties guilty, as required by law. The affidavits upon which the attachment for contempt issues shall make a *prima facie* case for the State. The accused may plead in the same manner as to an indictment in so far as the same is applicable. Evidence may be oral or in the form of affidavits, or both. The defendant shall not necessarily be discharged upon his denial of the fact stated in the moving papers. The clerk of the court shall, upon the application of either party, issue subpœnas for witnesses, and except as above set forth the practice in such contempt proceedings shall conform as nearly as may to the practice in the Court of Common Pleas. That when any solicitor neglects or refuses to perform any duty or to take any steps required of him by any of the provisions of the preceding section or by any of the provisions of this act, the attorney general, on his own motion, or by the request of the governor, shall in person or by his assistant proceed to the locality and perform such neglected duty and take such steps as are necessary in the place instead of such solicitor, and at his discretion to cause a prosecution to be instituted, not only in the matter so neglected, but also a prosecution against the solicitor for malfeasance or misfeasance in office or for official misconduct or for other charges justified by facts and to pursue the prosecution to the extent of a conviction and dismissal from office of any such solicitor. And in such event the attorney general shall be, and is hereby, authorized and empowered to appoint one or more additional assistants, who shall each have while actually employed the same compensation, to be paid from the litigation fund of the attorney general.

SEC. 23. The state commissioner, under rules and regulations provided by the state board of control, may enter into contracts with responsible

any seizure of said goods, under any pretence of authority, would be a grievous trespass and in disregard of constitutional rights, for which they would be held responsible; that the

grape-growers in this State for the sale of domestic wines through the dispensary, so as to encourage grape-growing in this State, and in furtherance of this object not more than ten per cent profit to the dispensary over the expenses of bottling, labelling, freighting, etc., shall be charged for the handling of such wines. The manager of every registered distillery of liquor in this State shall report quarterly to the state commissioner, showing the number of gallons of each kind of liquor on hand, manufactured or disposed of during the quarter; and if the said report fail to correspond with the return of said distiller to the United States internal revenue collector of this State, or it is shown that said manager has disposed of liquor contrary to this act, said distillery shall be deemed to be a common nuisance, and the said manager and his aiders and assistants and the premises shall be proceeded against as in this act provided as to places where liquors are sold contrary to this act.

SEC. 24. In all places where liquors are unlawfully kept or stored, the same not being in an open house or exposed to view, and a search being necessary, upon affidavit to that effect, or on information and belief that contraband liquor is in such place, a search warrant may be issued by a justice, judge or trial justice, or mayor or intendant of a city or town, to whom application is made, empowering a constable, or any person who may be deputized, to enter the said place by daytime or in the night-time and to search and examine the said premises for the purpose of seizing the said contraband liquors therein concealed, kept or stored, which said liquor when so seized shall be disposed as hereinafter provided.

SEC. 25. That any of the liquors set forth in section one (1) of this act, which are contraband, may be seized and taken without warrant by any state constable, sheriff or policeman, while in transit or after arrival, whether in possession of a common carrier, depot agent, express agent, private person, firm, corporation or association, and reported to the state commissioner at once, who shall dispose of the same as hereinafter provided: *Provided*, That liquors purchased outside the State, owned and conveyed as personal baggage, shall be exempt from seizure when the quantity does not exceed one gallon.

SEC. 26. That the possession of said illicit liquors is hereby prohibited and declared unlawful, and any obligation, note of indebtedness, contracted in their sale or transportation is declared to be absolutely null and void, nor shall any action or suit for the recovery of the same be entertained in any court in this State.

SEC. 27. That the proceeding against liquor so illegally kept, stored, sold, delivered, transported or being transported shall be considered a proceeding *in rem*, unless otherwise herein provided, elsewhere than at his or her residence.

defendants, notwithstanding such notice, and claiming to act as constables of the State of South Carolina, forcibly seized and carried away the said packages; and that, in committing

SEC. 28. That the carriage, transportation, possession, removal, sale, delivery or acceptance of any of the said liquors or liquids in any package, cask, jug, box or other package, under any other than the proper name or brand known to the trade as designating the kind and quality of the contents of the casks, packages or boxes containing the same, or the causing of such carriage, transportation, possession, removal, sale, delivery or acceptance, shall work the forfeiture of said liquors or liquids and casks or packages, and the person or persons so offending, knowingly, be subject to pay a fine of not less than one hundred dollars nor more than five hundred dollars, or imprisonment for the term of not less than six months nor more than one year, and the wrongful name, address, mark, stamp or style on such liquor when seized shall be considered evidence *prima facie* of guilt. The books and way bills of the common carrier may be examined to trace said liquor to the shipper, who shall be liable, upon conviction, in a like penalty.

SEC. 29. That all constables, deputy constables, sheriffs, trial justices or municipal policemen shall have the right, power and authority, and it shall be their duty, whenever they are informed or suspect that any such suspicious package in possession of a common carrier contains alcoholic liquors or liquids, to detain the same for examination for the term of twenty-four hours without any warrant or process, whatever. Any constable, deputy constable, sheriff or trial justice who shall neglect or refuse to perform the duties required by this act shall be subject to suspension by the governor. Any sheriff or trial justice seizing any alcoholic liquors or liquids, as required by this section, shall be paid one half the value of such liquor or liquids so soon as the same shall have been received at the state dispensary, approved and disposed of according to law.

SEC. 30. That any interference by any person with, obstruction or resistance of, or abusive language to, any officer or person in the discharge of the duties herein enjoined, or the use of abusive language by any such officer or person to any other person or persons, shall be deemed a misdemeanor, and the person or persons so offending shall, upon conviction, be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or imprisoned for a term of not less than three months nor more than twelve months.

SEC. 31. In all cases of seizure of any goods, wares or merchandise hereafter or heretofore made as being subject to forfeiture under any provision of this act or the former act, which, in the opinion of the officer or person making the seizure, are of the appraised value of fifty dollars or more, the said officer or person shall proceed as follows: First. He shall cause a list containing a particular description of the goods, wares or merchandise seized to be prepared in duplicate and an appraisement thereof to be made

the said unlawful acts, the said defendants acted knowingly, wilfully and maliciously, and with intent to oppress and humiliate and intimidate the plaintiff, and make him afraid

by three sworn appraisers to be selected by him, who shall be respectable and disinterested citizens of the State of South Carolina residing within the county wherein the seizure was made. Said list and appraisement shall be properly attested by the said officer or person and the said appraisers, for which service each of the said appraisers shall be allowed the sum of one dollar per day, not exceeding five days, to be paid by the state commissioner. Second. If the said goods are believed by the officer making the seizure to be of less value than fifty dollars, no appraisement shall be made. The said officer or person shall proceed to publish a notice for three weeks, in writing, at three places in the county where the seizure was made, describing the articles and stating the time and place and cause of their seizure, and requiring any person claiming them to appear and make such claim within thirty days from the date of the first publication of such notice. Third. Any person claiming the liquors so seized as contraband and the vessels containing the same, within the time specified in the notice, may file with the state commissioner a claim stating his interest in the articles seized, and may execute a bond to the state commissioner in the penal sum of five hundred dollars, with sureties, to be approved by the said state commissioner, conditioned that in the case of condemnation of the articles so seized the obligors shall pay all the costs and expenses of the proceedings to obtain such condemnation; and upon the delivery of such bonds to the state commissioner he shall transmit the same with the duplicate list or description of the goods seized to the solicitor of the circuit in which such seizure was made and the said solicitor shall prosecute the case to secure the forfeiture of said contraband liquors or liquids in the court having jurisdiction. Fourth. If no claim is interposed and no bond given within the time above specified, such liquors shall be forfeited without further proceedings, and the state commissioner shall have the said liquors tested by the state chemist, and if pure shall sell the same through the state dispensary as though purchased by him. If not pure, he shall sell the same beyond the State and deposit the proceeds to the credit of the state commissioner: *Provided*, That in seizures in quantities less in value than fifty dollars of such illicit liquor or liquors, the same may be advertised with other quantities at Columbia by the state commissioner and disposed of as hereinbefore provided: *Provided, further*, That the claimants of such liquors may give bond in one hundred dollars as when the value is fifty dollars or over, and shall bear the burden of showing before a trial justice that he has complied with the law and that the liquor is not liable to seizure.

Sec. 32. That all fermented, distilled or other liquors or liquids containing alcohol, transported into this State or remaining herein for use, sale, consumption, storage or other disposition, shall, upon introduction and

to rely upon the Constitution and laws of the United States and the judicial power thereof for his protection in the rights, privileges and immunities secured to him by the Con-

arrival in this State, be subject to the operation and effect of this law to the same extent and in the same manner as though such liquors or liquids had been produced in this State.

SEC. 33. That no person, except as provided in this act, shall bring into this State or transport from place to place within this State, by wagon, cart or other vehicle, or by any other means or mode of carriage, any liquor or liquids containing alcohol, under a penalty of one hundred dollars or imprisonment for thirty days for each offence, upon conviction thereof, as for a misdemeanor. Any servant, agent or employé of any persons, corporations or associations, doing business in this State as common carrier, or any person whatever (except an officer seizing or examining the same), who shall remove any intoxicating liquors from any railroad car, vessel or other vehicle of transportation at any place other than the usual and established stations, wharves, depots or places of business of such common carriers within some incorporated city or town where there is a dispensary, or who shall aid in or consent to such removal, or attempt to remove, shall upon conviction be sentenced to pay a fine of not less than one hundred dollars nor more than five hundred dollars, or imprisonment for a term of not less than three months nor more than twelve months: *Provided,* That said penalty shall not apply to any liquor in transit when changed from car to car to facilitate transportation across the State: *Provided,* That this section does not apply to liquors purchased from a dispensary and bearing the proper label or certificate. All liquors in this State, except dispensary liquors and those passing through this State, consigned to points beyond this State, shall be deemed contraband, and may be seized in transit without warrant. And any steamboat, sailing vessel, railroad, express company or other common carrier transporting or bringing into this State for sale or use therein, except by the dispensary, shall suffer a penalty of five hundred dollars and costs for each offence, to be recovered by the solicitor of the circuit, or the attorney general, by an action brought therefor in any court of competent jurisdiction. The state constable, sheriff, municipal police or any lawful constable may enter any railroad car, or express car, or depot, or steamboat, or other vessel, without warrant and make search for such contraband liquors, and may examine the waybills and freight books of said common carriers, and any one interfering with or resisting such officers shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or imprisonment for a term of not less than three months nor more than twelve months.

SEC. 34. That any person detected openly or in the act of violating any of the provisions of this act shall be liable to arrest without warrant: *Provided,* A warrant shall be procured within a reasonable time thereafter.

SEC. 35. That violations of any of the sections of this act where pun

stitution and laws of the United States; and that the defend-
ants well knew when they made said seizures and committed
said trespasses that said acts were unlawful and forbidden by

---

ishment upon conviction is not especially provided for, the person or
persons or corporations so convicted shall be punished in the discretion
of, the court trying the same. All alcoholic liquors other than domestic
wine, and in quantity more than five gallons, which do not have on the
packages in which they are contained the label and certificates going to
show that they have been purchased from a state officer authorized to sell
them are hereby declared contraband, and on seizure will be forfeited to
the State as provided in section 31 : *Provided,* That this section shall not
apply to liquor held by the owners of registered stills. Persons having
more than five gallons of liquor which they wish to keep for their own use
may throw the protection of the law around the same by furnishing an ·
inventory of the quantity and kinds to the state commissioner and apply-
ing for certificates to affix thereto. After sixty days from the approval of
this act any liquor found in the State not having such certificates may be
seized and confiscated. Persons having more than they wish to use may
obtain certificates to ship beyond the limits of the State. Any persons
affixing or causing to be affixed to any package containing alcoholic liquor
any imitation stamp or other printed or engraved label or device than
those furnished by the state commissioner shall, for each offence, be liable
to a penalty of ten days' imprisonment or twenty-five dollars fine.

SEC. 36. Every person who disposesses or rescues from a constable or
other officer, or attempts so to do, any alcoholic liquor taken or detained
by such officer charged with the enforcement of this law, shall, upon con-
viction, be imprisoned not less than three months nor more than twelve
months, or pay a fine of not less than one hundred dollars nor more than
five hundred dollars.

SEC. 37. Any person handling contraband liquor in the night-time, or
delivering the same, shall be guilty of a misdemeanor, and on conviction
shall be punished by imprisonment for not less than three months, nor
more than twelve months, or by a fine of not less than one hundred dollars
nor more than five hundred dollars.

SEC. 38. Any wagon, cart, boat or other conveyance transporting
liquors at night, other than regular passenger or freight steamers and
railway cars, shall be liable to seizure and confiscation, and to that end the
officer shall cause the same to be duly advertised and sold and the proceeds ·
sent to the state commissioner.

SEC. 39. Every dispenser when he sells a package containing liquor shall
put a cross-mark in ink on the label or certificate thereon, extending from
the top to the bottom and from side to side. When any liquor is seized
because it has not the necessary certificates and labels required by this act,
the burden of proof shall be upon the claimant of said spirits to show that
no fraud has been committed and that the whiskey is not contraband.

the laws and Constitution of the United States, but that they so acted, trusting and believing that ·they would be shielded and protected from all harm by their official superiors in the

---

SEC. 40. That any railroad, steamboat, express company or other common carrier, shall incur a penalty of treble the invoice price of any alcoholic liquors lost or stolen in transit to or from the dispensary, whether shipped as released or not, such penalty to be recovered by action in any court of competent jurisdiction.

SEC.·41. That it shall be unlawful for any persons to take or to solicit orders, or to receive money from other persons, for the purchase or ship-· ment of any alcoholic liquors for or to such other persons in this State, except for liquors to be purchased and shipped from. the dispensary, and any person violating this section, upon conviction, shall be deemed guilty of a misdemeanor, and shall be punished by imprisonment for a term of not less than three months nor more than twelve months, or by a fine of not less than one hundred ·dollars nor more than five hundred dollars.

SEC. 42. It shall be the duty of sheriffs, deputy sheriffs and constables having notice of the violation of any of the provisions of this act to notify the circuit solicitor of the fact of such violation, and to furnish him the names of any witness within their knowledge by whom such violation can be proven. If any such officer or solicitor shall wilfully fail to comply with the provisions of this section, he shall, upon conviction, be fined in a sum not less than one hundred dollars nor more than five hundred dollars, and such conviction shall work a forfeiture of the office held by such person, and the court before whom such conviction is had shall, in addition to the imposition of the fine aforesaid, order and adjudge the forfeiture of his said office.

SEC. 43. The governor shall have authority to appoint one or more state constables, at a salary of two dollars per day when on duty, and two chief constables, at three dollars each per day and expenses, to see that this act is enforced, the same to be charged to the expense account of the state commissioner, except as otherwise provided in this act.

SEC. 44. That chapter I, title VII, of the Code of Civil Procedure of this State, entitled "Of provisional remedies in civil actions," shall not apply to any officer or person having duties to perform under this act, and in no case shall an action lie against any such officer or person for damages to person or property as provided in said chapter.

SEC. 45. That when any bill of indictment shall have been given out by any solicitor or by the attorney general or an assistant attorney general to any grand jury in any county of this State at any term of the court of general sessions therein charging any person or persons with any violation of any of the provisions of the statutes of this State relating to spirituous, alcoholic, malt or intoxicating liquors, such grand jury shall in the opinion of such ·prosecuting officer, from prejudice, caprice, undue influence or improper cause, refuse to find a true bill thereon, it shall be then and there

State of South Carolina; and that they made such seizures and committed such trespasses wilfully and maliciously, with the purpose and intent to trample on the plaintiff's rights under the law and to do him all the injury in the power of the defendants.

These allegations must, for the purpose of disposing of the present question, be accepted by us as true or, at least, as susceptible of proof.

Damages have been defined to be the compensation which the law will award for an injury done, and are said to be exemplary and allowable in excess of the actual loss, where a tort is aggravated by evil motive, actual malice, deliberate violence or oppression. While some courts and text-writers have questioned the soundness of this doctrine, it has been accepted in England, in most of the States of this Union, and has received the sanction of this court.

In the case of *Wilkes* v. *Wood*, Lofft, 19, which was an action of trespass for breaking into the plaintiff's house and seizing his papers, under color of a general warrant by a secretary of State, Chief Justice Pratt, in charging the jury, and in replying to the contention of the solicitor general that damages nominal or merely compensatory were all that could be allowed, said: "Notwithstanding what the solicitor gen-

---

competent for such prosecuting officer to move for, and for the presiding judge to grant at his discretion, a change of venue and place of hearing and trial at such stage of the proceedings when such judge is satisfied with the showing of such prosecuting officer, to be made on the minutes of the court or upon affidavit, that a fair and impartial consideration cannot be had before such grand jury.

SEC. 46. That whenever in this act it is provided that process shall issue upon an affidavit based on information and belief, the affidavit shall contain a statement setting forth the sources of information, the facts and grounds of belief upon which the affiant bases his belief: *Provided*, That it shall not be necessary to set forth the sources of information, the facts and grounds of belief in the affidavit upon which a warrant of arrest shall issue, but it shall only be necessary in cases of search warrants.

SEC. 47. That this act shall be a public act, and shall go into effect immediately upon its approval by the governor, and that all acts or parts of acts inconsistent with this act be, and are hereby, repealed.

Approved January 2d, A.D. 1895.

eral has said, I have formerly delivered it as my opinion on another occasion, and I still continue of the same mind, that a jury have it in their power to give damages for more than the injury received. Damages are designed not only as a satisfaction to the injured person, but likewise as a punishment to the guilty, to deter from any such proceeding for the future, and as a proof of the detestation of the jury to the action itself." The jury found a verdict with a thousand pounds damages.

In the case of *Huckle* v. *Money*, 2 Wilson, 205, there was a motion for a new trial on the ground that the jury had allowed excessive damages. It was proved on the trial that the plaintiff was a journeyman printer, and was taken in custody by the defendant, under the general warrant of a secretary of State, upon suspicion of having printed a certain libellous paper; that the defendant kept him in custody about six hours, but used him very civilly by treating him with beef-steaks and beer, so that he suffered very little or no damages. The jury gave him a verdict in three hundred pounds damages. In disposing of the motion, the Lord Chief Justice Pratt said: "That if the jury had been confined by their oath to consider the mere personal injury only, perhaps twenty pounds damages would have been thought sufficient; but the small injury done to the plaintiff, or the inconsiderableness of his station and rank in life, did not appear to the jury in that striking light, in which the great point of law touching the liberty of the subject appeared to them at the trial. . . . I cannot say what damages I should have given if I had been upon the jury, but I directed and told them they were not bound to any certain damages. Upon the whole I am of opinion the damages are not excessive, and that it is very dangerous for the judges to intermeddle in damages for torts; it must be a glaring case indeed of outrageous damages in a tort, and which all mankind at first blush must think so, to induce a court to grant a new trial for excessive damages."

In *Day* v. *Woodworth*, 13 How. 371, which was an action of trespass charging the defendants with tearing down and destroying the plaintiff's mill dam, this court, through Mr. Justice Grier, said:

"It is a well-established principle of the common law that, in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive or vindictive damages upon a defendant, having in view the enormity of his offence rather than the measure of compensation to the plaintiff. . We are aware that the propriety of this doctrine has been questioned by some writers, but if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument. By the common, as well as by statute law, men are often punished for aggravated misconduct or lawless acts, by means of a civil action, and the damages inflicted by way of penalty or punishment given to the party injured. In many civil actions, such as libel, slander, seduction, etc., the wrong done to the plaintiff is incapable of being measured by a money standard, and the damages assessed depend on the circumstances, showing the degree of moral turpitude or atrocity of the defendant's conduct, and may properly be termed exemplary or vindictive rather than compensatory.

"In actions of trespass, where the injury has been wanton and malicious, or gross and outrageous, courts permit juries to add to the measured compensation of the plaintiff which he would have been entitled to recover, had the injury been inflicted without design or intention, something farther by way of punishment or example, which has sometimes been called 'smart money.' This has always been left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the particular circumstances of each case."

*Philadelphia, Wilmington & Baltimore Railroad* v. *Quigley,* 21 How. 202, 213, was a case wherein a railroad company was responsible in an action for the publication of a libel; and although this court reversed the Circuit Court for allowing the jury to give exemplary damages, because there was no evidence that the injury was inflicted maliciously or wantonly, yet the case of *Day* v. *Woodworth,* 13 How. 363, was cited with approval as recognizing the power of a jury in certain

actions of tort to assess against the tort-feasor punitive or exemplary damages, and as laying down the law that whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person.

This was likewise recognized as well-settled doctrine in the case of *Lake Shore Railway* v. *Prentice*, 147 U. S. 107.

The intentional, malicious and repeated interference by the defendants with the exercise of personal rights and privileges secured to the plaintiff by the Constitution of the United States, as alleged in the complaint, constitutes, as we think, a wrong and injury not the subject of compensation by a mere money standard, but fairly within the doctrine of the cases wherein exemplary damages have been allowed. Those allegations of the complaints, though denied in the answers, have been sustained by the tribunal — in these cases the court, a jury having been waived — which had to pass upon the issues of fact.

That the amount of the recovery in each case fell short of the sum of two thousand dollars did not withdraw the cases from the jurisdiction of the court. As the declarations alleged damages in the sum of six thousand dollars, and as a jury would be at liberty to find any amount not in excess of that sum, the jurisdiction, having once validly attached, would not be defeated by the fact that the recoveries were for sums less than two thousand dollars. As said in the case of *Day* v. *Woodworth*, above cited, "The amount has always been left to the discretion of the jury, as the degree of the punishment to be then inflicted must depend on the particular circumstances of each case."

*Barry* v. *Edmunds*, 116 U. S. 550, was a fully considered case, and it was there held that a suit cannot properly be dismissed by a Circuit Court of the United States as not substantially involving a controversy within the jurisdiction of the court, unless the facts, where made to appear on the record, create a legal certainty of that conclusion; that where

exemplary damages beyond the sum·necessary to give a Circuit Court of the United States jurisdiction are claimed in an action for a malicious trespass, the court should not dismiss the case for want of jurisdiction simply because the record shows that the actual injury caused to the plaintiff by the trespass was less than the jurisdictional amount, and that it is settled in this court that in an action for a trespass accompanied with malice the plaintiff may recover exemplary damages in excess of the amount of his injuries, if the *ad damnum* is properly laid.

Our inquiries thus far have proceeded on the assumption that the injuries complained of were inflicted in the enforcement of an unconstitutional law of the State. Sustaining the jurisdiction of the Circuit Court on that assumption, we are now brought to the more important and difficult question whether the so called dispensary law of the State of South Carolina is, indeed, as to some or all of its parts, invalid, as being in conflict with the Constitution of the United States and acts of Congress made thereunder? Is that statute a lawful exercise of the police power of the State?

In the present discussion we do not deem it necessary or desirable to review the numerous cases in which this court has had occasion to consider similar questions. We shall find it sufficient to apply to the case before us the conclusions announced in several very recent cases.

The difficulty of the subject is shown in the frequent and elaborate dissents in many of the cases. Still, it can be safely said that the differences of opinion thus manifested have not been so much upon fundamental principles, as upon questions of the construction and meaning of the various state statutes that have been under consideration. Those statutes have covered almost innumerable subjects; such as the exclusion from the State of contagious or infectious diseases, or of criminals, paupers and others likely to become a burden or public charge; regulations requiring railroad companies to fence their roads; forbidding the manufacture and sale of oleomargarine; the prohibition of Sunday labor, even by railroad companies partly engaged in interstate commerce, etc.

But the particular state laws that have been most frequently considered, and have occasioned the most discussion, have been those that have sought to regulate or forbid the importation, manufacture and sale of intoxicating liquors. And the law, whose validity we are now to consider, is one of that class.

The evils attending the vice of intemperance in the use of spirituous liquors are so great that a natural reluctance is felt in appearing to interfere, even on constitutional grounds, with any law whose avowed purpose is to restrict or prevent the mischief. So long, however, as state legislation continues to recognize wines, beer and spirituous liquors as articles of lawful consumption and commerce, so long must continue the duty of the Federal courts to afford to such use and commerce the same measure of protection, under the Constitution and laws of the United States, as is given to other articles.

We cheerfully concede that the law in question was passed in the *bona fide* exercise of the police power. We disclaim any imputation to the law-makers of South Carolina of a design, under the guise of a domestic regulation, to interfere with the rights and privileges of either her own citizens or those of her sister States, which are secured to them by the Constitution and laws of the United States.

But, as we have had more than one occasion to observe, our willingness to believe that this statute was enacted in good faith, and to protect the people of the State from the evils of unrestricted importation, manufacture and sale of ardent spirits, cannot control the final determination whether the statute, in some of its provisions, is not repugnant to the Constitution of the United States. As was said in *Mugler* v. *Kansas*, 123 U. S. 623, 661: "If a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

It is important to observe that the statute before us does not purport to prohibit either the importation, the manufac-

ture, the sale or the use of intoxicating liquors. The first section does, indeed, make it penal to manufacture, sell, barter, deliver, store or keep in possession any spirituous, malt, vinous, fermented, brewed or other liquors, which contain alcohol, and are used as a beverage, and declares all such liquors to be contraband and against the morals, good health and safety of the State, and authorizes them to be seized wherever found, without warrant, and turned over to the state commissioner; yet those enactments are not absolute, but are made subject to the subsequent provisions of the act. When those subsequent provisions are examined, we find that, so far from the importation, manufacture and sale of such liquors being prohibited, those operations are turned over to state functionaries, by whom alone, or under whose direction, they are to be carried on.

Thus section three provides for the appointment of a state commissioner, who is required to purchase all intoxicating liquors for lawful sale in the State, and to furnish the same to such persons as may be designated as dispensers thereof, to be sold as thereafter provided in the act. Such commissioner is directed, before shipping the liquor to county dispensaries, to cause the same to be put up in sealed packages of not less than one half pint nor more than five gallons, in which packages they shall be sold by county dispensers.

The fifteenth section enacts that " any person, firm, association or corporation desiring or intending to manufacture or distill any liquors containing alcohol within the State, shall first obtain from the state board a permit or license to do so," and said section further provides " that manufacturers of distilled, malt or vinous liquors who are doing business within this State shall be allowed to sell to no person in this State except the state commissioner and to parties outside the State, and the state commissioner shall purchase his supplies from the brewers and distillers in this State when their product reaches the standard required by this act: *Provided*, Such supplies can be purchased as cheaply from such brewers and distillers in this State as elsewhere." So, too, the twenty-third section provides that " the state commissioner may enter into

contracts with responsible grape-growers in this State for the sale of domestic wines through the dispensary, so as to encourage grape-growing in this State, and in furtherance of this subject not more than ten per cent profit to the dispensary over the expense of bottling, labelling, freighting, etc., shall be charged for the handling of such wines." But there is no such limitation of charge in the case of imported wines. And in cases of seizure of contraband liquors, the thirty-first section provides that " the state commissioner shall have the same tested by the state chemist, and if pure shall sell the same through the state dispensary as though purchased by him ; and if not pure he shall sell the same beyond the State ; and deposit the proceeds to the credit of the state commissioner."

In view of these and similar provisions, it is indisputable that whatever else may be said of this act, it was not intended to prohibit the manufacture, sale and use of intoxicating liquors. On the contrary, liquors and wines are recognized as commodities which may be lawfully made, bought and sold, and must therefore be deemed to be the subject of foreign and interstate commerce.

It is sought to defend the act, as an inspection act, within the meaning of that provision of the Constitution of the United States which permits the States to impose excise duties as far as they may be absolutely necessary for executing their inspection laws.

The act does, indeed, contain provisions looking to the ascertainment of the purity of liquors, and to that extent may be said to be in the nature of an inspection law. But those provisions, such as they are, do not redeem the act from the charge of being an obstruction and interference with foreign and interstate commerce. This aspect of the question has been several times considered by this court in cases where similar attempts were made to sustain state statutes as legitimate inspection laws.

In *Railroad Co.* v. *Husen,* 95 U. S. 465, the validity of an act of the State of Missouri, which forbade the introduction into the State of any Texan or Mexican cattle between the

months of March and December of each and every year, was considered.

It was contended on behalf of the law that it was valid as a quarantine or inspection law, as its purpose was to prevent the introduction of cattle afflicted with contagious diseases. But the court pointed out that no provision was made for the actual inspection of the cattle, so as to secure the rejection of those that were diseased, but that all importation of cattle, whether sound or diseased, was forbidden for long periods; and it was held that the statute was void as a plain intrusion upon the exclusive domain of Congress.

*Walling* v. *Michigan*, 116 U. S. 446, 459, 460, was a case wherein was brought into question the validity of a statute of the State of Michigan, which imposed a tax or duty on persons who, not having their principal place of business within the State, engage in the business of selling liquors, to be shipped into the State; and it was held that a discriminating tax imposed by a State, operating to the disadvantage of the products of other States when introduced into the first mentioned State, is, in effect, a regulation in restraint of commerce among the States, and as such is a usurpation of the power confirmed by the Constitution upon the Congress of the United States. Answering the argument upon which the law had been sustained by the Supreme Court of the State, this court, through Mr. Justice Bradley, said: "It is suggested by the learned judge who delivered the opinion of the Supreme Court of Michigan in this case, that the tax imposed by the act of 1875 is an exercise by the legislature of Michigan of the police power of the State for the discouragement of the use of intoxicating liquors, and the preservation of the health and morals of the people. This would be a perfect justification of the act if it did not discriminate against the citizens and products of other States in a matter of commerce between the States, and thus usurp one of the prerogatives of the national legislature. The police power cannot be set up to control the inhibitions of the Federal Constitution, or the powers of the United States government created thereby."

In 1886 the legislature of the State of Iowa passed an act forbidding any common carrier from bringing within that State, for any person or corporation, any intoxicating liquors from any other State or Territory of the United States, without first having been furnished with a certificate, under the seal of the county auditor of the county to which said liquor was to be transported or was consigned for transportation, certifying that the consignee or person to whom said liquor was to be transported, conveyed or delivered, was authorized to sell intoxicating liquor in said county. This statute was declared invalid in the case of *Bowman* v. *Chicago & Northwestern Railway*, 125 U. S. 465, 493, this court saying, through Mr. Justice Matthews: " The statute of Iowa under consideration falls within this prohibition. It is not an inspection law; it is not a quarantine or sanitary law. It is essentially a regulation of commerce among the States within any definition heretofore given to that term, or which can be given; and although its motive and purpose are to perfect the policy of the State of Iowa in protecting its citizens against the evils of intemperance, it is none the less on that account a regulation of commerce. If it had extended its provisions so as to prohibit the introduction into the State from foreign countries of all importations of intoxicating liquors produced abroad, no one would doubt the nature of the provision as a regulation of foreign commerce. Its nature is not changed by its application to commerce among the States. . . . And here is the limit between the sovereign power of the state and the Federal power. That is to say, that which does not belong to commerce is within the jurisdiction of the police power of the State and that which does belong to commerce is within the jurisdiction of the United States. . . . The same process of legislation and reasoning adopted by the State and its courts would bring within the police power any article of consumption that a State might wish to exclude, whether to that which was drank or to food and clothing."

In *Leisy* v. *Hardin*, 135 U. S. 100, it was recognized that ardent spirits, distilled liquors, ale and beer are subjects of exchange, barter and traffic like any other commodity in

which a right of traffic exists, and that being thus articles of commerce, a State cannot, in the absence of legislation on the part of Congress, prohibit their importation from abroad or from a sister State, nor when imported prohibit their sale by the importer; and, accordingly, it was held that a statute of the State of Iowa, prohibiting the sale of any intoxicating liquors, except for pharmaceutical, medicinal, chemical or sacramental purposes, and under a license from a county court of the State, was, as applied to a sale by the importer, and in the original packages or kegs, unbroken and unopened, of such liquors manufactured and brought from another State, uncon- stitutional and void, as repugnant to the clause of the Constitution granting to Congress the power to regulate commerce with foreign nations and among the several States.

In *Minnesota* v. *Barber*, 136 U. S. 313, 326, 328, the facts so closely resemble those shown by the record now under consideration, and the principles stated in the opinion are so applicable, that we shall state them with some particularity.

A statute of the State of Minnesota, entitled " An act for the protection of the public health by providing for inspection, before slaughter, of cattle, sheep and swine designed for slaughter for human food," in its first section prohibited the sale of any fresh beef, veal, mutton, lamb or pork for human food in the State, except as subsequently provided in the act. Boards of inspectors were there provided for, whose duty it should be to inspect all cattle, sheep and swine slaughtered for human food. It was made a matter of fine or imprisonment for any one to sell or expose for sale for human food any fresh beef, mutton, lamb or pork which had not been so inspected.

This court, in an opinion delivered by Mr. Justice Harlan, while conceding that the statute was enacted in good faith, for the purpose expressed in the title, namely, to protect the health of the people of Minnesota, held that, as the necessary effect of the act was to deny altogether to the citizens of other States the privilege of selling, within the limits of Minnesota, for human food, any fresh beef, mutton, veal or pork, from animals slaughtered outside of the State, and to compel the

people of Minnesota, wishing to buy such meats, either to pur-
chase those taken from animals inspected and slaughtered in
the State, or to incur the cost of purchasing them, when de-
sired for their own domestic use, at points beyond the State,
such legislation was void as constituting a discrimination
against the products and business of other States in favor of
the products and business of Minnesota, and as depriving the
people of Minnesota of the right to bring into that State, for
the purposes of sale and use, sound and healthy meat, wherever
such meat may have come into existence. It was said:

" A law providing for the inspection of animals whose meats
are designed for human food cannot be regarded as a rightful
exertion of the police powers of the State, if the inspection
prescribed is of such a character, or is burdened with such
conditions, as will prevent altogether the introduction into
the State of sound meats, the products of animals slaughtered
in other States. It is one thing for a State to exclude from
its limits cattle, sheep or swine, actually diseased, or meats
that, by reason of their condition, or the condition of the ani-
mals from which they are taken, are unfit for human food,
and punish all sales of such animals or of such meats within
its limits. It is quite a different thing for a State to declare,
as does Minnesota by the necessary operation of its statute,
that fresh beef, veal, mutton, lamb or pork — articles that are
used in every part of this country to support human life —
shall not be sold at all for human food within its limits, unless
the animal from which such meat is taken is inspected in that
State, or, as is practically said, unless the animal is slaughtered
in that State. . . . It is, however, contended, in behalf of
the State, that there is in fact no interference by this statute,
with the bringing of cattle, sheep and swine into Minnesota
from other States, nor any discrimination against the products
and business of other States for the reason — such is the argu-
ment — that the statute requiring an inspection of animals on
the hoof, as a condition of the privilege of selling, or offering
for sale, in the State, the meats taken from them, is applicable
alike to all owners of such animals, whether citizens of Min-
nesota or citizens of other States. To this we answer, that a

statute may, upon its face, apply equally to the people of all the States, and yet be a regulation of interstate commerce which a State may not establish. A burden imposed by a State upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to the people of all the States including the people of the State enacting such statute. *Robbins* v. *Shelby Taxing District,* 120 U. S. 489, 497; *Case of the State Freight Tax,* 15 Wall. 232. The people of Minnesota have as much right to protection against the enactments of that State, interfering with the freedom of commerce among the States, as have the people of other States. Although this statute is not avowedly, or in terms, directed against the bringing into Minnesota of the products of other States, its necessary effect is to burden or affect commerce with other States, as involved in the transportation into that State, for the purposes of sale there, of all fresh beef, veal, mutton, lamb or pork, however free from disease may have been the animals from which it was taken."

The same reasoning prevailed in *Brimmer* v. *Rebman,* 138 U. S. 78, wherein an act of the State of Virginia, which declared it to be unlawful to offer for sale, within the limits of that State, any beef, veal or mutton from animals slaughtered one hundred miles or more from the place at which it is offered for sale, unless it has been previously inspected and approved by local inspectors, was held void, as being in restraint of commerce between the States, and as imposing a discriminating tax upon the products and industries of some States in favor of the products and industries of Virginia; and wherein it was said "that the statute of Virginia, although avowedly enacted to protect its people against the sale of unwholesome meats, has no real or substantial relation to such an object, but, by its necessary operation, is a regulation of commerce, beyond the power of the State to establish."

After the decision in *Leisy* v. *Hardin,* and, perhaps, in pursuance of some observations contained therein, Congress passed the act of August 8, 1890, 26 Stat. 313, c. 728, enacting "that all fermented, distilled or other intoxicating liquors, or liquids transported into any State or Territory, or remaining therein

for use, consumption, sale or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." This law was approved as valid, in the case of *In re Rahrer*, 140 U. S. 545, and a provision of the constitution of Kansas, which provided that the manufacture and sale of intoxicating liquors shall be forever prohibited in that State, except for medicinal, scientific and mechanical purposes, and an act passed in enforcement thereof, making penal the manufacture, sale or barter of any spirituous, malt, vinous, fermented or other intoxicating liquors, were held to be efficacious, and that imported liquors or liquids shall, upon arrival in a State, fall within the category of domestic articles of a similar nature.

In *Plumley* v. *Massachusetts*, 155 U. S. 461, 471, and in *Emmert* v. *Missouri*, 156 U. S. 296, in the first of which the validity of a state law forbidding the manufacture and sale of imitation butter, and in the second the validity of an act compelling itinerant pedlers to take out licenses, were sustained, the scope and effect of the case of *Leisy* v. *Hardin* and of the act of Congress of August 8, 1890, were considered and a full review of the cases heretofore cited was gone into and their principles elaborately discussed.

In the light of these cases the act of South Carolina of January 2, 1895, must, as to those of its provisions which affect the plaintiff in the present suits, stand condemned.

It is not an inspection law. The prohibition of the importation of the wines and liquors of other States by citizens of South Carolina for their own use is made absolute, and does not depend on the purity or impurity of the articles. Only the state functionaries are permitted to import into the State, and thus those citizens who wish to use foreign wines and liquors are deprived of the exercise of their own judgment and taste in the selection of commodities. To empower a

state chemist to pass upon what the law calls the "alcoholic purity" of such importations by chemical analysis can scarcely come within any definition of a reasonable inspection law.

It is not a law purporting to forbid the importation, manufacture, sale and use of intoxicating liquors, as articles detrimental to the welfare of the State and to the health of the inhabitants, and hence it is not within the scope and operation of the act of Congress of August, 1890. That law was not intended to confer upon any State the power to discriminate injuriously against the products of other States in articles whose manufacture and use are not forbidden, and which are therefore the subjects of legitimate commerce. When that law provided that "all fermented, distilled or intoxicating liquors transported into any State or Territory, remaining therein for use, consumption, sale or storage therein, should, upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and should not be exempt therefrom by reason of being introduced therein in original packages or otherwise," evidently equality or uniformity of treatment under state laws was intended. The question whether a given state law is a lawful exercise of the police power is still open, and must remain open, to this court. Such a law may forbid entirely the manufacture and sale of intoxicating liquors and be valid. Or it may provide equal regulations for the inspection and sale of all domestic and imported liquors and be valid. But the State cannot, under the Congressional legislation referred to, establish a system which, in effect, discriminates between interstate and domestic commerce in commodities to make and use which are admitted to be lawful.

Whether those provisions of the act which direct that so called contraband liquors may be seized without warrant by any state constable, sheriff or policeman, while in transit or after arrival, whether in possession of a common carrier,

depot agent, express agent or private person, and which subject common carriers to fine and imprisonment for carrying liquors in any package, cask, jug, box or other package, under any other than the proper name or brand known to the trade, and which forbid the bringing of any suit for damages alleged to arise by seizing and detention of liquors under the act, would be lawful in an inspection law otherwise valid, we do not find it necessary to now consider. It was pressed on us, in the argument, that it is not competent for a State, in the exercise of its police power, to monopolize the traffic in intoxicating liquors, and thus put itself in competition with the citizens of the other States.

This phase of the subject is novel and interesting, but we do not think it necessary for us now to consider it. It is sufficient for the present cases to hold, as we do, that when a State recognizes the manufacture, sale and use of intoxicating liquors as lawful, it cannot discriminate against the bringing of such articles in, and importing them from other States; that such legislation is void as a hindrance to interstate commerce and an unjust preference of the products of the enacting State as against similar products of the other States.

There has been filed in the record a suggestion by the attorney general of the State of South Carolina that, since the trials of these cases in the court below, there has been passed by the general assembly of that State a further act approved by the governor on March 6, 1896, which act it is submitted, supersedes and repeals parts of the act which has been under consideration in these cases; and we are asked to consider the provisions of the more recent act.

So far as these actions at law are concerned, it is, of course, obvious that the damages recovered were for acts committed under the alleged authority of the act of 1895, and cannot be affected by the provisions of the act of 1896, even if the invalidities of the former act were thereby remedied — a matter on which we express no opinion.

The judgments of the Circuit Court are

*Affirmed.*

MR. JUSTICE BROWN dissenting.

I am unable to concur in the opinion of the court holding the South Carolina dispensary law to be unconstitutional, as applied to the facts of this case. While I see no reason to question the propriety of our rulings in the cases analyzed in the opinion, of *Railroad Co.* v. *Husen*, 95 U. S. 465; *Minnesota* v. *Barber*, 136 U. S. 313; and *Brimmer* v. *Rebman*, 138 U. S. 78, they do not seem to me to have any considerable bearing upon the question in controversy, in view of the recent legislation by Congress upon the subject of intoxicating liquors.

In *Leisy* v. *Hardin*, 135 U. S. 100, this court in April, 1890, overruling the prior case of *Peirce* v. *New Hampshire*, 5 How. 504, held that a state statute prohibiting the sale of intoxicating liquors, except for certain purposes, and under license from a county court, was, when applied to a sale by an importer of liquors brought from another State in the original packages, unconstitutional and void, as repugnant to the power of Congress to regulate commerce. Following closely upon this decision, and probably in consequence of it, Congress, upon August 8 of the same year, enacted what is popularly known as the "Wilson bill," and declared that all such liquors transported into any State, or remaining there for use, consumption, sale or storage, should, upon arrival be " subject to the operation and effect of the laws of such State, enacted in the exercise of its police powers," to the same extent as if they had been produced in such State.

The effect of this enactment seems to me to withdraw intoxicating liquors from the operation of the commerce clause of the Constitution, and to permit the traffic in them to be regulated in such manner as the several States, in the exercise of their police powers, shall deem best for the general interests of the public. The act is not limited in its operation, as the majority opinion seems to assume, to state laws forbidding the importation, manufacture and sale of such liquors; but declares that they shall be subject, upon their arrival within the State, to the operation of *all* its laws enacted in the exercise

of its police powers. Adopting the very language of the act of Congress, section 32 of the dispensary law provides: "That all fermented, distilled or other liquors or liquids containing alcohol, transported into this State or remaining herein for use, sale, consumption, storage or other disposition, shall, upon introduction and arrival in this State, be subject to the operation and effect of this law, to the same extent and in the same manner as though such liquors or liquids had been produced in the State."

We cannot fail to recognize the growing sentiment in this country in favor of some restrictions upon the sale of ardent spirits, and whether such restrictions shall take the form of a license tax upon dealers, a total prohibition of all manufacture or sale whatever, or the assumption by the state government of the power to supply all liquors to its inhabitants, is a matter exclusively for the States to decide.

The first section of the dispensary law of South Carolina declares that the manufacture, sale, receipt, acceptance or keeping in possession of alcoholic liquors, except when bought from a state officer authorized to sell the same, are declared to be contraband, and against the morals, good health and safety of the State, and may be seized wherever found without warrant. Now, as Congress has expressly declared that such articles shall, upon their arrival in the State, become subject to its laws to the same extent as if they had been originally produced there, and, as the dispensary act does not declare them contraband as imported liquors, or because they were imported, but because they were not bought from a state officer authorized to sell the same, and as the law makes no discrimination in that particular between imported and domestic liquors, it is impossible for me to see why Congress has not directly authorized the action that was taken by the state officers in seizing these liquors. The power to declare intoxicating liquors to be contraband and to prohibit their manufacture and sale *in toto* was affirmed by this court in *Mugler* v. *Kansas*, 123 U. S. 623, and if the provision requiring them to be bought of the state dispensary be valid, it applies as well to imported as to domestic liquors.

But, as I understand, the court bases to a certain extent its opinion of the unconstitutionality of this act upon the fact that the traffic in intoxicating liquors is not absolutely prohibited, but is monopolized by the State itself through the agency of a state commissioner, who is required (§ 3) to "purchase all intoxicating liquors for lawful sale" in the State, and to "furnish the same to such persons as may be designated as dispensers thereof," to be sold as thereafter provided in the act. Conceding this to be so, I am unable to see that any provision of the Federal Constitution is thereby infringed. The Constitution does, indeed, require of each State a republican form of government, and, in the tenth section of the first article, imposes certain limitations upon state action, none of which have any relevancy to the subject under consideration. Except as restricted by the provisions of this section, the several state legislatures possess, so far as any interference by the Federal government is concerned, full legislative powers, and, with respect to the subject of intoxicating liquors, are, since the passage of the "Wilson bill," untrammelled by the Federal Constitution.

Granting that the act gives the State itself a monopoly of all traffic in such liquors, it is not a monopoly in the ordinary or odious sense of the term, where one individual or corporation is given the right to manufacture or trade which is not open to others, but a monopoly for the benefit of the whole people of the State, the profits of which, if any, are enjoyed by the whole people; in short, a monopoly in the same sense in which the Post Office Department, and the right to carry the mails, is a monopoly of the Federal government. *Lowenstein* v. *Evans,* 69 Fed. Rep. 908.

The only objections to the dispensary law which strike me as being of any force are the provisions of the fifteenth and twenty-third sections, requiring the state commissioner to purchase his supplies from the brewers and distillers in the State; but even this provision, though perhaps unwise, is subject to two conditions: first, that their product shall reach the standard required by the act; and, second, that such supplies can be purchased as cheaply from such brewers and

distillers in this State as elsewhere. As this restriction is practically no restriction at all, and only incorporates in the statute exactly what the law would imply without it, I see no valid objection to it.

But even if it were conceded that this particular provision of the law were inoperative, and might be so declared in a case properly raising that question, it is not of the essence of the law, but a mere incident to the power of the commissioner, and surely should not have the sweeping effect of rendering the whole law unconstitutional and void. The main object of the act is to preserve the health and morals of the people by securing to them pure liquors, prohibiting individual dealings in such liquors, and requiring all such traffic to be carried on through the agencies of the State. Such methods of dealing with this traffic are by no means unknown abroad. Indeed, I understand the act to be but the reproduction in this country of what is known as the Gothenberg system.

It is entirely well settled that the unconstitutionality of a particular provision will not invalidate an entire statute, unless such provision embodies the main purpose of the statute, or is so connected with such purpose that it is inseparable from it, or, unless the court can see that the legislature would not have passed the act without such provision. This doctrine has been repeatedly affirmed by this court. *Bank of Hamilton* v. *Dudley,* 2 Pet. 492; *Austin* v. *The Aldermen,* 7 Wall. 694; *Packet Co.* v. *Keokuk,* 95 U. S. 80. Indeed, in *Tiernan* v. *Rinker,* 102 U. S. 123, this court held an act of the legislature of Texas, taxing intoxicating liquors, to be inoperative only so far as it discriminated against imported wines or beers; and that as defendant was also engaged in selling other liquors, an injunction was properly refused. That the provision that the commissioner in purchasing the liquors shall give preference to those of domestic manufacture is separable from the main purpose of the act seems to me too clear for argument. That the legislature would have passed the act without this provision is conclusively shown by the fact that, in a general amendment and reënactment of this law, made in 1896, this provision was omitted.

While the power of courts to declare an act of legislation to be unconstitutional undoubtedly exists, it is one of great delicacy, particularly when brought to bear upon the legislative acts of another sovereignty. In one of the early cases decided by this court, *Fletcher* v. *Peck*, 6 Cranch, 87, 128, it was said by Chief Justice Marshall: "But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." Still more explicit is the language of Chief Justice Waite in the *Sinking Fund cases*, 99 U. S. 700, 718: "It is our duty, when required in the regular course of judicial proceedings, to declare an act of Congress void if not within the legislative power of the United States; but this declaration should never be made except in a clear case. Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule."

I regard these words as particularly applicable to the dealings by this court with the proceedings of a state legislature, and that their right to determine what is for the best interests of their people should be carefully respected, except where it comes in manifest conflict with the dominant law. Especially should everything be avoided which carries the suggestion of a vexatious interference with state action. The manifest dangers to the future of the country, which lurk in the inflexibility of the Federal Constitution, can only be averted by carefully distinguishing between such laws as practically concern the inhabitants of a particular State only, and are intended *bona fide* for their welfare, and such as are a mere subterfuge for an unlawful discrimination, and cannot be carried into effect without doing palpable injustice to citizens of other States. It should not be overlooked in this connec-

tion that the complaints in this case emanate from a citizen of South Carolina, who seeks to defy the law of his own State, and puts forward as his excuse the injustice done the citizens of other States who make no complaint of her action in this particular. If a State cannot prohibit her own citizens from importing liquors, as well as buying them at home, the "Wilson bill" is set at nought, and the prohibitory laws of the several States rendered inoperative in a vital particular. The fact that these liquors were imported for complainant's own use and consumption, instead of for sale, raises no question under the Federal Constitution. Both are under the ban of the statute.

I am unable to see wherein that section of the dispensary act of South Carolina, which authorized the seizure made in this case, conflicts in any particular with the Federal Constitution.

Mr. Justice Brewer did not hear the argument and took no part in the decision of these cases.