## 9545

### BRENNEN v. SOUTHERN EXPRESS CO.

#### (90 S. E. 402.)

1. COMMERCE — INTERSTATE  COMMERCE — UNLAWFUL  DISCRIMINATION AGAINST LIQUORS—STATUTE.—Act Feb. 20, 1915 (29 St. at Large, p. 140), rendering it unlawful for any person or company to transport intoxicants from without the State into it, except that any person may order and receive from without the State not exceeding a gallon a month, was violative of the Federal Constitution previous to the prohibition of the manufacture and sale of liquors in the State, as making an unlawful discrimination against liquors shipped into the State in interstate commerce, in view of the fact that it was lawful for citizens of counties having dispensaries to buy liquors therefrom for personal use without limit.

2. COMMERCE—INTERSTATE COMMERCE—WEBB-KENYON ACT—EFFECT.— Act Congress, March 1, 1913, c. 90 (37 Stat. 699 [Comp. St. 1913, sec. 8739]), known as the Webb-Kenyon Act, divesting intoxicating liquors of their interstate character in certain cases, was not intended to confer, and did not confer, on any State the power to make unjust discriminations against the products of other States which are recog-

nized as objects of lawful commerce by the laws of the State making such discriminations, nor the power to make unjust discriminations between its own citizens.

3. COMMERCE—INTERSTATE COMMERCE—WEBB-KENYON ACT—CONSTITU-TIONALITY.—Act Congress, March 1, 1913, known as the Webb-Kenyon Act, divesting intoxicating liquors of their interstate character when such liquor is intended to be received, possessed, sold, or in any manner used in violation of State laws, is not unconstitutional as attempting to confer upon the State power to regulate interstate commerce, the regulation being made by Congress itself in excluding from interstate commerce liquor that is intended to be received, etc., in violation of State law.

4. COMMERCE—INTERSTATE COMMERCE—POWER TO REGULATE.—The power to regulate commerce includes by necessary inference the power to exclude, absolutely or conditionally, from its operations injurious things and pernicious practices.

5. INTOXICATING LIQUORS — INTERSTATE SHIPMENTS — APPLICATION OF WEBB-KENYON ACT.—Unless there was a valid State law which the receipt, possession, sale or use of intoxicating liquors shipped in interstate commerce would violate, act Congress, March 1, 1913, the Webb-Kenyon Act, divesting intoxicating liquors of their interstate character when such liquor is intended to be received, possessed, sold or in any manner used in violation of State laws, does not apply.

6. INTOXICATING LIQUORS—INTERSTATE COMMERCE—WEBB-KENYON ACT —CONSTRUCTION.—Act Congress, March 1, 1913, the Webb-Kenyon Act, divesting intoxicating liquors of their interstate character when intended to be received, possessed, or sold, or in any manner used in violation of State laws, is applicable to shipments intended only for personal use, provided such shipments, and the receipt, possession, or use of the liquors is in violation of State law.

7. INTOXICATING LIQUORS—REGULATION OF USE—STATUTE—CONSTITU-TIONALITY.—Act Feb. 20, 1915, declaring that the unrestricted personal use of intoxicating liquors is detrimental to the public welfare, and that their receipt, and the having in possession of unlimited quantities, tends to hinder and defeat the enforcement of the laws against their sale, and limiting the permisssible amount to a gallon a month per person, is not unconstitutional; the State having the power to regulate and control the use of intoxicants by its citizens.

8. CONSTITUTIONAL LAW—POLICE POWER—INTERFERENCE BY COURTS.—So long as the legislature's exercise of the State's police power bears a reasonable relation to a legitimate purpose sought to be accomplished, the Courts may not interfere, as they have no concern with the wisdom and policy of legislation.

Before BOWMAN, J., Columbia, October, 1915. Modified.

Application for mandamus by Thomas F. Brennen against the Southern Express Company. From a judgment dismissing the complaint, plaintiff appeals.

*Messrs. Logan & Graydon, Lawrence Maxwell* and *Joseph S. Graydon,* for appellant, cite: *As to right to use and import, receive and possess intoxicating liquors:* 55 S. C. 207 and 247; 170 U. S. 438; 5 How. 504, 583; 28 Tex. Crim. 295; 154 Ky. 471; 133 Ky. 50; 164 Ala. 599; 33 W. Va. 141, 151; 163 Ky. 227; Freund Police Power, secs. 453, 454. *State statute discriminatory:* 165 U. S. 58; 199 U. S. 437; 170 U. S. 438; 94 S. C. 453. *Interstate commerce:* 223 U. S. 70. *Construction of Webb-Kenyon Act:* 91 Atl. 385, 398; 219 Fed. 794; 160 Ky. 66; 169 S. W. 603. *Reference to contemporary history as aid to statutory construction:* 196 U. S. 19; 141 U. S. 468; 143 U. S. 457; 173 U. S. 65; 182 U. S. 244; 11 Enc. of U. S. Reports 143; 154 Ky. 462; 157 S. W. 906; 48 L. R. A. (N. S.) 345; 165 S. W. 236; 215 Fed. 672; 170 S. W. 749; 66 S. W. 115; 65 So. 575; 210 Fed. 378; 219 Fed. 794. *Constitutionality of Webb-Kenyon Act:* 170 U. S. 412; 140 U. S. 155.

*Mr. Thomas H. Peeples, Attorney General,* for respondent, cites: *As to the validity of the Webb-Kenyon Act:* 219 Fed. 794; 135 C. C. A. 464; L. R. A. 1916c, 291 to 298; 96 S. C. 444; 69 S. C. 652; L. R. A. 1916c, 278; 87 S. E. 136; 238 U. S. 190. *The gallon-a-month law a valid exercise of police power by the State:* 170 U. S. 438; 179 U. S. 445; 198 U. S. 17, 25; 208 U. S. 472; 90 Ala. 638, 641;

FOOTNOTE.—As to the prohibition of liquors for personal use, see notes 19 A. & E. Ann. Cas. 159. As to the constitutionality, construction and effect of the Webb-Kenyon Law, see notes in L. R. A. 1916c, 299, A. & E. Ann. Cas. 1915d, 1171, Ann. Cas. 1917a, 622, and decision in *James Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U. S. 311, 37 Sup. Ct. Rep. 180, filed January 8, 1917.

61 Ohio St. 605; 56 N. E. 479. *Regulation of commerce:* 188 U. S. 321; 166 U. S. 290; 171 U. S. 505; 175 U. S. 211; 227 U. S. 308; 220 U. S. 45; 189 U. S. 137; 145 N. W. 451; 93 U. S. 188; 232 U. S. 478; 192 U. S. 470; 98 Fed. 423; 81 S. E. 628, 632. *Legal aspect of prohibition:* Case & Comment, Dec. 1913, p. 641. *Police power of the State:* 113 U. S. 273; 140 U. S. 545; 156 U. S. 1; 125 U. S. 465; 135 U. S. 100; 170 U. S. 412 and 438; 167 U. S. 518; 219 U. S. 104; 226 U. S. 192; 152 U. S. 133; 211 U. S. 31; 232 U. S. 138; 184 U. S. 426; 187 U. S. 607; 225 U. S. 623. *Possession prohibited:* 211 U. S. 31; 152 U. S. 133; 232 U. S. 138. *Manufacture and sale prohibited:* 140 U. S. 545; 112 U. S. 201; 123 U. S. 623; 97 U. S. 25; 128 U. S. 1; 137 U. S. 91; 226 U. S. 192. *Receipt and possession prohibited:* 69 So. Rep. 652; 151 U. S. 1006; 87 S. E. 136; 210 Fed. 378; 33 Me. 558; 54 Am. Dec. 639; 109 Ga. 373; 47 L. R. A. 36. *Solicitation of orders prohibited:* 205 U. S. 93; 68 So. Rep. 993. *Transportation prohibited:* 179 Ala. 51; 177 Ala. 149. *Storing or keeping in certain places:* 8 Ala. App. Ct. Rep. 386; 62 So. 365; 67 So. 651; 82 Kan. 756; 109 Pac. 183; 125 U. S. 465. *Importation:* 12 Wheaton 420; 188 U. S. 321, 362. *Regulations affecting health:* 169 U. S. 363. *Real purpose of prohibition legislation:* 27 Vt. 328; 159 Ala. 71; 69 So. 652; 67 So. 651; 219 Fed. 794; 71 Atl. 894; 20 L. R. A. (N. S.) 495, 496; 140 Pac. 49; 137 U. S. 87; 123 U. S. 623. *Extent of police power respecting personal use of liquor:* 210 Fed. 378; 69 Ala. 652; 87 S. E. 136; 33 Me. 558; 54 Am. Rep. 639; 109 Ga. 373; 47 L. R. A. 36; 77 Am. St. Rep. 384; 83 S. E. 254, 255. *Legislative rather than judicial questions:* 2 McMul. 233; 49 S. C. 187; 33 S. C. 56; 83 S. C. 372, 386 to 388; 96 S. C. 442; 42 S. C. 232; 100 S. C. 242. *Limitations on police power:* 71 S. C. 490; 42 S. C. 230-231; 101 S. C. 317; 151 Pac. 1008.

*Mr. Fred. H. Dominick, Assistant Attorney General,* also for respondent.

The Circuit Judges were called to the assistance of the Court.

October 14, 1916.

The opinion of the Court *en banc* was delivered by MR. JUSTICE HYDRICK.

The plaintiff, who is a citizen of this State, residing in the city of Columbia and county of Richland, sought by mandatory injunction to require defendant, a common carrier in interstate commerce, to deliver to him a certain consignment of whiskey, and also to receive, transport, and deliver to him other consignments thereof, as ordered by him. He alleges that on May 6, 1915, he ordered one gallon of whiskey from a licensed dealer in Richmond, Va., which defendant received, transported, and delivered to him; that on May 10, 1915, he ordered from the same dealer another gallon, which defendant received and transported to Columbia, but refused to deliver to him; that on May 12, 1915, he ordered from the same dealer two gallons, the tender of which to defendant at Richmond was refused; that all the liquor so ordered was intended for his personal use, and was not intended by him, or any one interested therein, to be received, possessed, sold, or in any manner used in violation of any law of this State; that delivery of the second and acceptance of the third consignment were refused by defendant on the sole ground that the same would be in violation of the statute of this State, approved February 20, 1915, which makes it unlawful for any carrier to bring into this State and deliver to any person for his own use more than one gallon of intoxicating liquor in any calendar month; that at the times stated it was lawful for a citizen of those counties hav-

ing dispensaries, Richland being one, to buy such liquors from the dispensaries for personal use without limit as to time or quantity; that the sale thereof, through the dispensaries, was not solely as a police regulation, but also for profit. The facts alleged were admitted by a demurrer to the complaint, which was sustained by the Circuit Court, and the complaint was dismissed.

The legislature passed an act, which was approved February 16, 1915 (29 Stat. 88), to submit to the qualified electors of the State the question of the prohibition of the manufacture and sale of alcoholic liquors and beverages in this State, and to provide for carrying into effect the provisions thereof. Under the provisions of that act an election was held on September 14, 1915, which resulted in favor of the prohibition of the manufacture and sale of alcoholic liquors and beverages in the State, and the dispensaries were closed on December 31, 1915, and the law now prohibits the manufacture and sale of such liquors as a beverage in this State. At the same session another act was passed, which was approved February 20, 1915 (29 Stat. 140), to regulate the shipment of such liquors into this State. The first two sections of that act, which contain all the provisions of it that are pertinent to the questions involved in this case, read:

"Section 1. That it shall be unlawful for any person, firm, corporation or company to ship, transport or convey any intoxicating liquors from a point without the State into this State, or from one point to another in this State, for the purpose of delivery, or to deliver the same to any person, firm, corporation or company within this State, or for any person, firm, corporation or company to receive, or be in possession of, any spirituous, vinous, fermented or malt liquors or beverages containing more than one per cent. of alcohol, for his, her, its or their own use, or for the use of any other person, firm or corporation, except as hereinafter provided.

"Sec. 2. Any person may order and receive from any point without the State not exceeding one gallon within any calendar month, for his or her personal use, of spirituous, vinous, fermented or malted liquors or beverages."

The first question to be decided is : Did the statute law of this State, as it stood at the date of the transactions alleged in the complaint, and at the time of the decision in the Circuit Court, which was before the prohibition law became effective, violate the Federal Constitution by making an unlawful discrimination against liquors shipped into the State in interstate commerce? That question must be answered in the affirmative. At that time the State recognized liquor as a legitimate article of commerce by engaging in the importation and sale of it for profit. And there was no limit to the quantity which a citizen who patronized the dispensaries might buy and keep in his possession for personal use, and no limit to the number of purchases that might be made within any specified time. There was, therefore, clearly a discrimination made in favor of liquors bought from the dispensaries and of persons who patronized the dispensaries. The point was squarely decided in *Scott* v. *Donald,* 165 U. S. 58, 101, 17 Sup. Ct. 265, 272 (41 L. Ed. 632), where the Court said:

"It is sufficient for the present cases to hold, as we do, that when a State recognizes the manufacture, sale, and use of intoxicating liquors as lawful, it cannot discriminate against the bringing of such articles in and importing them from other States; that such legislation is void as a hindrance to interstate commerce and an unjust preference of the products of the enacting State as against similar products of the other States."

The act of Congress of March 1, 1913, known as the Webb-Kenyon Act, does not affect the decision of the question; for, while that act does divest intoxicating liquors shipped into a State in violation of its laws of their interstate character and withdraw from them the protection of

interstate commerce, it evidently contemplated the violation of only valid State laws. It was not intended to confer and did not confer upon any State the power to make injurious discriminations against the products of other States which are recognized as subjects of lawful commerce by the law of the State making such discriminations, nor the power to make unjust discriminations between its own citizens. Substantially the same thing was said in *Scott* v. *Donald* of the Wilson Act (act Aug. 8, 1890, 26 Stat. 313, c. 728 [Comp. St. 1913, section 8738]), by which Congress made liquors shipped into a State subject to its laws after delivery thereof to the consignee. The principle there decided was reaffirmed in *Vance* v. *Vandercook,* 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100.

It follows that the Circuit Court erred in refusing the relief prayed for. It does not follow, however, that the relief prayed for should now be granted, further than to require delivery of the second shipment, if it has not already been delivered, because, as has been stated since the trial in the Court below, the discriminating feature of the State law has been removed by the prohibition of the sale of liquor in the State and the closing of the dispensaries, and, as the law now stands, the obtaining of liquor for personal use is regulated solely by the act of February 20, 1915. The validity of that act depends upon the constitutionality of the Webb-Kenyon Act, and the construction of it with respect to the extent that Congress intended to prohibit the shipment and transportation of liquors in interstate commerce, and thereby allow a correspondingly greater extent and effect to be given to the laws of the States prohibiting or regulating their importation.

The constitutionality of the Webb-Kenyon Act is attacked on the ground, as alleged, that it attempts to confer upon the States the power to regulate interstate commerce, a power that was conferred by the Constitution upon Congress, and therefore one which Congress alone can exercise. The title of the act is:

"An act divesting intoxicating liquors of their interstate character in certain cases."

Its pertinent provisions are in substance:

"That the shipment or transportation of any intoxicating liquor from one State into any other State, which said liquor is intended, by any person interested therein, to be received, possesssed, sold or in any manner used in violation of any law of such State, is prohibited."

There is nothing in the title or body of the act upon which the attack can be sustained. The regulation is made by Congress itself in excluding from interstate commerce liquor that is intended to be received, possessed, sold, or used in violation of any State law.

The power to regulate commerce includes by necessary inference the power to exclude, absolutely or conditionally, from its operations injurious things and pernicious practices, and that has been done by Congress in numerous instances, which have been sustained by the Supreme Court. *Champion* v. *Ames,* 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492 (lottery tickets) ; *Hipolite Egg Co.* v. *United States,* 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364 (adulterated foods and drugs) ; *Hoke* v. *United States,* 227 U. S. 308, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913e, 905 (white slave traffic). The Wilson Act, which was of similar, though less extended, effect, was attacked on the same ground. It provided that liquors transported in interstate commerce should be subject to the law of the States upon arrival therein. In Rahrer's case, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, the Supreme Court affirmed its constitutionality as a

valid exercise by Congress itself of the power to regulate commerce.  In respect of being a regulation of commerce by Congress itself, it would be difficult to draw a distinction between the two acts.

The construction of the Webb-Kenyon law is more difficult of solution.  It will be noticed that it does not purport to divest intoxicating liquors of their interstate character altogether, but only "in certain cases."  The body of the act tells us what these cases are, to wit, when such liquor is intended to be received, possessed, sold, or in any manner used in violation of State laws. Therefore, unless there is a valid State law which the receipt, possession, sale, or use of such liquor would violate the act of Congress does not apply.  As we have a law restricting receipt and possession, and therefore, by the use, at least to some extent, and prohibiting sale, this question arises: Did Congress intend that liquors shipped or transported in interstate commerce for personal use of the consignee should be subject to the operation of State laws, enacted in the exercise of the police power, regulating such use?  The difficulty in answering that question arises not from any doubt as to the primary meaning of the words used by Congress, but from extraneous circumstances and considerations.  The words are plain enough and sufficiently comprehensive in meaning to include that intention, and, if it is denied to them, it must be by construction arising out of and controlled by considerations other than the plain and ordinary meaning of the language used.

It is contended, and it must be admitted there is some force in the contention that, inasmuch as the words used in the act can be given a meaning and construction consistent with the absence of such intention, and inasmuch as the existence of such intention would make possible the enactment and enforcement of State laws that infringe upon personal rights and liberties to an extent heretofore unattempted, or unsustained when attempted, it should be pre-

sumed that Congress had no such intention. And in support of the presumption reference is asked as to the debates in Congress, where it is said the sponsors of the bill repeatedly stated, pending its passage, that it was not intended to interfere with the right to import liquor for personal use. No doubt what they said was true; for the act itself does not so interfere. Their statements are consistent also with this idea: If the States have the power to prohibit or regulate personal use, Congress has no right to interfere; if they have not such power, the act, as passed, would be harmless, in the event of an attempt to make it applicable to that right.

On the other hand, this consideration is urged in support of such an intention. The Wilson law was enacted in response to a popular demand for a more extended operation of State laws regulating the liquor traffic. And when it was enacted and construed so that liquors imported were not subject to State laws until after delivery thereof to the consignee, illicit dealers took advantage of that defect in the law and imported large quantities for illegal sale and use, under the false pretense that it was intended for personal use. The State was powerless to interfere with liquor so imported until after it was in the hands of the illicit dealers, and, once there, it became much easier for them to use it and dispose of it in violation of State laws, without detection. Besides, this state of the law made it more difficult, if not impossible, for the States to enact and enforce laws limiting or restricting the personal use of such liquors. This led to a widespread popular demand for remedy of the defect in the law, and it is easy to believe that the Webb-Kenyon law was enacted in response to that demand. Now, if that law be construed so as to save the right to import in unlimited quantities for personal use, the situation is little, if any, better than it was before. In view of this well-known history of the law, and the resulting evil, it is but reasonable to conclude that Congress intended to supply an effective remedy, and that the Webb-Kenyon law is applicable to shipments

intended only for personal use, provided such shipments and the receipt, possession, or use of the liquor be in violation of State law.

This brings us to the next question: Has the State the power to regulate and control the personal use of intoxicating liquor by its citizens? Or, conversely stated, has the citizen the constitutional right to import liquor in unlimited quantities for personal use? The history of legislation on the liquor traffic in this and other countries abundantly shows that the power to make laws regulating or prohibiting the liquor traffic has been assumed.to exist in every sovereign State, and that it has been exercised in many different ways, with the highest judicial sanction. It is true that until comparatively recent years such legislation has been directed principally to the regulation or prohibition of sales of intoxicants. But it might have been directed to the regulation or prohibition of purchase, or it might have been made to apply to both seller and buyer. But this.circumstance should not lead us from the true conception of the ultimate purpose of such laws; for certainly there is no vice in or harm that can result from the mere sale of liquors. The mischief comes of its use or abuse. The real purpose, therefore, of such legislation, except where it is solely for revenue, is to limit and control personal consumption. Such laws are founded upon the belief, which is very general, if not universal, that the unrestricted use of intoxicants is detrimental, not only to the user, but also to his family, and both directly and indirectly in many ways to the State. The truth is, whether it be admitted or not, that liquor is the cause of many evils. It wrecks and ruins many lives, it causes much unhappiness in the homes of our people, corruption in our politics, and degradation and vice and pauperism and crime. Is the social body so sorely afflicted, helpless? Has the State no power to rid society of at least some of the injurious results of its use and the traffic in it.

It has been frequently held that the State cannot, by contract or otherwise, divest itself of that undefined and undefinable power of sovereignty called the police power—the power to protect its citizens and itself, the only reason for the State's existence. This power extends to all the great public needs. *Camfield* v. *United States,* 167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260.

"It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." *Noble State Bank* v. *Haskell,* 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912a, 487.

That it may be exerted arbitrarily or tyrannically is denied. But that it may be reasonably exerted for the protection of society against all forms of evil, for the protection of men against the greed, avarice and other vices of each other, and even for the protection of men against themselves—against their own weaknesses and follies—is sustained by the highest reason and judicial authority.

The Supreme Court of the United States has held repeatedly that the prohibition of the manufacture and sale of liquor within the State and the prohibition of the manufacture of it for personal use does not offend the guaranty of the Federal Constitution that the privileges and immunities of the citizens shall not be abridged, nor any other guaranty of that instrument. *Mugler* v. *Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; *Crowley* v. *Christensen,* 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620. In Mugler's case, that great expounder of constitutional law, Mr. Justice Harlan, speaking for the Court, said:

"It will be observed that the proposition, and the argument made in support of it, equally concede that the right to manufacture drink for one's personal use is subject to the condition that such manufacture does not endanger or affect the rights of others. If such manufacture does preju-

dicially affect the rights and interests of the community, it follows, from the very premises stated, that society has the power to protect itself, by legislation, against the injurious consequences of that business. As was said in *Munn* v. *Illinois,* 94 U. S. 113, 124 (24 L. Ed. 77), while power does not exist with the whole people to control rights that are purely and exclusively private, government may require 'each citizen to so conduct himself, and so use his own property, as not unnecessarily to injure another.' But by whom, or by what authority, is it to be determined whether the manufacture of particular articles of drink, either for general use or for the personal use of the maker, will injuriously affect the public? Power to determine such questions, so as to bind all, must exist somewhere, else society will be at the mercy of the few, who, regarding only their own appetites or passions, may be willing to imperil the peace and security of the many, provided only they are permitted to do as they please. Under our system that power is lodged with the legislative branch of the government. It belongs to that department to exert what are known as the police powers of the State, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety."

Read the quotation again, and substitute "import" and "importation" for "manufacture," and see how applicable the reasoning of the learned jurist is to the question we are now considering. If absolute prohibition does not offend the Constitution, by what process of reasoning can it be asserted that the lesser exertion of power in a measure of restriction and regulation does, provided, of course, it be equal and uniform in application and operation?

If it is true, as we have seen, that Congress has the power to exclude intoxicating liquors from interstate commerce, and the State the power to prohibit the manufacture and sale of it, even for personal use, what becomes of the alleged constitutional right of the citizen to obtain and drink it at his

pleasure? The logical answer is that he has no such right. As said by Mr. Justice Harlan for the Court in *Champion* v. *Ames:*

"If at the time of the passage of the act of 1890 (the Wilson act) all the States had enacted * * * laws prohibiting the sale of intoxicating liquors within their respective limits, then the act would necessarily have had the effect to exclude ardent spirits altogether from commerce among the States."

The conclusion is inevitable that the power to regulate and control the personal use of intoxicating liquor by the citizens rests with the lawmaking body of the State—the legislature. If the power be abused, as all power to be exercised with discretion and judgment may be, the remedy is with the people. They are the source from which it is derived. But so long as the exertion of power bears a reasonable relation to a legitimate purpose sought to be accomplished, the Courts may not interfere. With the wisdom and policy of legislative enactments they have no concern. Being forbidden by the Constitution to invade the legislative domain, they cannot substitute their judgment and discretion for that of the lawmakers.

"No one may rightfully do that which the lawmaking power, upon reasonable grounds, declares to be prejudicial to the general welfare." *Mugler* v. *Kansas, supra.*

Upon this principle it is held that the sale, and even the possession, of things harmless in themselves, may be prohibited, as a means to the accomplishment of an ulterior valid purpose. In *Purity Extract Co.* v. *Lynch,* 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184, a statute of Mississippi prohibiting the sale of a nonintoxicating malt liquor was sustained. The Court said:

"That the State in the exercise of its police power may prohibit the selling of intoxicating liquors is undoubted. *Bartemeyer* v. *Iowa,* 18 Wall. 129 (21 L. Ed. 929); *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25 (24 L. Ed. 989);

*Mugler* v. *Kansas,* 123 U. S. 623 (8 Sup Ct. 273, 31 L. Ed. 205) ; *Kidd* v. *Pearson,* 128 U. S. 1 (9 Sup. Ct. 6, 32 L. Ed. 346) ; *Crowley* v. *Christensen,* 137 U. S. 86 (11 Sup. Ct. 13, 34 L. Ed. 620). It is also well established that, when a State exerting its recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction separately considered is innocuous it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government. *Booth* v. *Illinois,* 184 U. S. 425 (22 Sup. Ct. 425, 46 L. Ed. 623) ; *Otis* v. *Parker,* 187 U. S. 606 (23 Sup Ct. 168, 47 L. Ed. 323) ; *Ah Sin* v. *Wittman,* 198 U. S. 500, 504 (25 Sup. Ct. 756, 49 L. Ed. 1142) ; *New York ex rel. Silz* v. *Hesterbery,* 211 U. S. 31 (29 Sup. Ct. 10, 53 L. Ed. 75) ; *Murphy* v. *California,* 225 U. S. 623 (32 Sup. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153). With the wisdom of the exercise of that judgment the Court has no concern; and unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. To hold otherwise would be to substitute judicial opinion of expediency for the will of the legislature, a notion foreign to our constitutional system."

In *New York* v. *Hesterberg,* 211 U. S. 31, 29 Sup. Ct. 10, 53 L. Ed. 75, it was held to be within the police power of the State to prohibit the possession of game during the closed season, even if it was brought from without the State.

As the legislature, in its wisdom, has by the act of February 20, 1915, in effect declared that the unrestricted personal use of intoxicating liquors is detrimental to the public welfare, and that the receipt and having in possession of unlimited quantities of such liquors by the citizens tends to hinder and defeat the enforcement of the law against the sale

thereof, and as that conclusion is based upon reasonable grounds, we must hold that the legislature has not exceeded the limit of its power. The individual citizen must submit to reasonable restraints and inconvenience to promote the common good. *"Suprema lex est salus populi."*

The judgment of the Circuit Court must be modified to conform to the views herein announced.

Modified.

Mr. CHIEF JUSTICE GARY, MESSRS. JUSTICES FRASER and GAGE, and CIRCUIT JUDGES MEMMINGER, GARY, WILSON, RICE, SMITH, MOORE, SEASE and PEURIFOY concur in the opinion of the Court.

Mr. JUSTICE WATTS, *dissenting.* The Federal government and the State government both recognize alcoholic liquors as a legitimate article of commerce; the general government by allowing the manufacture and sale for revenue, and the State government by allowing it to be imported and stored in limited quantities for personal use. Under the laws of the United States interstate commerce is exclusively under the jurisdiction of Congress. The State legislature cannot interfere in the affairs of common carriers in reference to interstate shipments without having some effect on interstate commerce. Therefore the act of the legislature of South Carolina in attempting to limit the amount of liquors that can be shipped from another State to a citizen of this State for personal and legitimate use is in conflict with the functions properly belonging to Congress and a burden on interstate commerce; it also deprives a citizen of this State from rights and privileges allowed citizens of other States, and in my opinion the act of legislature in question is unconstitutional, and for these reasons I dissent.

Circuit Judges PRINCE and DEVORE concur in the dissenting opinion delivered by Mr. JUSTICE WATTS.

CIRCUIT JUDGE SHIPP, *dissenting.* Being unable to concur in the prevailing opinion in this case written by Mr. Associate Justice Hydrick, and my duties on circut preventing the preparation of a full statement of my position, I shall endeavor briefly to cover the grounds of my dissent. The facts of the case are so clearly set forth in the opinion of Mr. Associate Justice Hydrick that I need not restate them.

The act of February 20, 1915 (29 Stats. 140), entitled "An act to regulate the shipment of spirituous, vinous, fermented or malt liquors or beverages into this State, and to provide penalties for the violation of this act," known as the "gallon a month" law, being passed at a time when the State of South Carolina was engaged in selling intoxicating liquors in unlimited quantities to any person who desired to purchase, imposed a burden on interstate commerce in that it prohibited the importation from without the State of more than one gallon to any one person in a calendar month. This was clearly a violation of the Federal Constitution, since it was an unlawful discrimination against liquors shipped into the State in interstate commerce. The opinion of Mr. Associate Justice Hydrick cites authorities in support of this position, and expressly declares that the act in question at the time of its enactment up to and including the time of the trial of the case under consideration was unconstitutional.

Reference to the title shows that the act does nothing more than limit the amount of liquors to be shipped into the State in interstate commerce, and provides penalties for its infringement. Hence, if it was invalid as constituting a burden on interstate commerce, it was void in its entirety.

If the statute was unconstitutional when enacted, it is void and of no force or effect; and nothing can revive or breathe life into it. The subsequent passage of the prohibition law by the legislature put an end to the State's engaging in the business of selling liquor and removed the constitutional defects that had rendered the "gallon a month"

law null and void, but only by re-enactment after the passage of the prohibition law could such legislation ever become valid.   The General Assembly has not taken such action, and the act of February 20, 1915, remains a nullity. This view is expressly sustained by a line of decisions of this Court, *Atkinson* v. *Southern Express Co.,* 94 S. C. 444, 78 S. E. 516, 48 L. R. A. (N. S.) 349; *Hodge* v. *School District,* 80 S. C. 518, 520, 61 S. E. 1009, and *State* v. *Whitesides,* 30 S. C. 579, 9 S. E. 661, 3 L. R. A. 777, and also by the trend of authorities in this country, a few of which are here cited: Cooley's Constitutional Limitations, 544, 545; *State* v. *Tufly,* 20 Nev. 427, 22 Pac. 1054, 19 Am. St. Rep. 374, and note appended thereto; *Seneca Mining Co.* v. *Secretary of State,* 82 Mich. 573, 47 N. W. 25, 9 L. R. A. 770; *State* v. *Miller,* 66 W. Va. 436, 66 S. E. 522, 19 Ann. Cas. 604; *Banaz* v. *Smith,* 133 Cal. 102, 65 Pac. 309; *Thomas* v. *State,* 76 Ohio St. 341, 81 N. E. 437, 10 L. R. A. (N. S.) 1112, 118 Am. St. Rep. 884.

For the reasons herein set out, I dissent from the opinion of the majority, and concur in the result of the opinion rendered by Mr. Associate Justice Watts.