10094

## MONUMENTAL BREWING CO. v. WHITLOCK.

### (97 S. E. 56.)

1. COMMERCE—INTERSTATE COMMERCE—SALE OF INTOXICATING LIQUOR.—
Sale of beer made during June and July, 1914, by shipping two car-
loads from Maryland to South Carolina pursuant to written order,
was not within Cr. Code 1912, secs. 794, 829, having been made prior
to adoption of act February 20, 1915 (29 St. at Large, p. 140), and
hence within protection of Interstate Commerce Law which is para-
mount to State's police power.

2. COMMERCE—INTERSTATE COMMERCE.—The Interstate Commerce Law
is paramount to the police power of the State.

3. COMMERCE—"INTERSTATE COMMERCE"—SALE OF GOODS.—The sale of a
legitimate article of interstate commerce is as much a part of "inter-
state commerce" as its transportation or delivery.

4. INTOXICATING LIQUORS — PLACE OF SALE — INTERSTATE SHIPMENT.—
Where seller in Maryland pursuant to written order from buyer in
South Carolina shipped latter two carloads of beer, the sale took
place before arrival of the beer at its destination and its delivery to
buyer.

5. COMMERCE—INTERSTATE COMMERCE—INTOXICATING LIQUOR—UNLAW-
FUL PURPOSE.—Where seller in Maryland shipped beer to buyer in
South Carolina, the fact that latter purchased the beer for purposes
forbidden by Cr. Code 1912, secs. 794, 829, did not destroy the inter-
state nature of the shipment.

Before PEURIFOY, J., Spartanburg, —— term.   Affirmed.

Action by the Monumental Brewing Company against
Wallace Whitlock.   Judgment for plaintiff, and defendant
appeals.

*Messrs. McCravy & Atkinson,* for appellant.   *Mr. J. B.
Atkinson* submits: *A contract made outside the State for the
sale of whiskey to be resold by purchaser within the State
contrary to law is contrary to the public policy of the State
and will not be enforced even though it was valid in the
State where it was made:* 81 S. E. 337; 29 S. C. 460; 56 S.
C. 547; 72 S. C. 408; 19 S. C. 587.   *The contract sued on
is contrary to section 829, vol. XI of the Criminal Code, and
the Courts of South Carolina can refuse to entertain any
action on such contracts:* 91 S. C. 406, 412; 73 S. C. 146;

2 Bailey 219; 61 L. R. A. 429; 19 S. C. 590; 94 S. C. 235; 97 S. C. 185; 20 S. C. 430; 171 N. C. 214. *If any doubt existed as to any part of the contract being made in South Carolina, it was the province of the jury to render their verdict under proper instructions:* 73 S. C. 466.

*Messrs. John Gary Evans* and *Nicholls & Nicholls,* for respondent, submit: *That this action is not abnoxious to the provisions of section 829 of Criminal Code of 1912, as that section refers to illicit liquors, which contained alcohol and are used as beverages, and which if drunk to excess will produce intoxication:* Criminal Code of 1912, section 794. *There is no testimony in this case showing that the beer sold to defendant by the plaintiff, if drunk to excess, would produce intoxication. The contract being valid in the State where it was made will enable the seller to maintain an action for the price in this State, notwithstanding that such contract, if made in this State, would have been void:* 23 Cyc. 76, 336b. *It was not encumbent upon seller to allege that sale was authorized by law, for if defendant relied on the illegality of the sale as a defense, he should have put in a special plea setting forth every fact essential to show that the sale was contrary to law:* 23 Cyc. (b); 1 McCord 481; 23 Cyc., p. 342c; 9 Cyc. 670; 5 Lawson's Rights, Remedies and Practice 3578; 54 Am. Dec. 573; 2 Am. State Rep. 902. *The nature, obligation and construction by the lex loci contractus, but the remedies by which contracts are enforced are to be according to the lex fori, which is trictly territorial:* 4 Rich. 219; 1 Nott & McCord 173. *Beer and other intoxicating liquors are legitimate of interstate commerce:* 135 U. S. 100. *A State cannot forbid any common carrier to transport such articles from a consignor in one State to a consignee in another, and until such transportation is concluded by delivering to the consignee, such commodities do not become subject to State regulation restraining their sale or disposition:* 94 S. C. 499. *One may lawfully keep in*

*possession liquor purchased for personal use, under the protection of the interstate commerce clause of the Federal Constitution:* 94 S. C. 450.

October 8, 1918.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

During the months of June and July, 1914, the defendant sent written orders to the plaintiff for two carloads of beer, to be shipped from Baltimore, Md., where the plaintiff resided, to Spartanburg, S. C., where the defendant had his residence. The plaintiff accepted the orders, and shipped the beer, which was duly delivered to the defendant in accordance with the terms of said contract. This action is to recover the amount alleged to be due as the purchase money for the two carloads of beer. At the close of the plaintiff's testimony, the defendant made a motion for the direction of a verdict, which was refused. The defendant did not introduce any testimony, whereupon the plaintiff made a motion for the direction of a verdict, which was granted, and the jury rendered a verdict in favor of the plaintiff for $1,908. The defendant appealed from the judgment entered on said verdict.

The principal question in the case is whether the sale of the beer, and its transportation from Baltimore, Md., to Spartanburg, S. C., was in violation of the statutes of South Carolina. The appellant relies upon sections 794 and 829 of the Criminal Code of South Carolina, which are as follows:

"Sec. 794. All alcoholic liquors and beverages, whether manufactured within this State or elsewhere, or any mixture by whatsoever name called, which if drunk to excess will produce intoxication, are hereby declared to be detrimental, and their use and consumption to be against the morals, good health and safety of the State, and contraband. It shall be unlawful for any person, firm, corporation or asso-

ciation within this State to manufacture, sell, barter, exchange, receive, accept, give away to induce trade, deliver, store, keep in possession in this State, furnish at public places, or otherwise dispose of any spirituous, malt, vinous, fermented, brewed or other liquors and beverages, or any compound or mixture thereof which contains alcohol, and is used as a beverage, and which if drunk to excess, will produce intoxication, except as hereinafter provided."

"Sec. 829. The possession of said illicit liquors, is hereby prhoibited and declared unlawful, and any obligation or note of indebtedness, contracted in their sale or transportation, is declared to be absolutely null and void, nor shall any action or suit for the recovery of the same be entertained in any Court in this State."

If this case had to be decided in accordance with the statutes adopted in 1915 (29 Stats., p. 140), prohibiting the sale and transportation of alcoholic liquors, a very different question would be presented from the one now under consideration. At the time of the sale and transportation of the beer in question, to wit, 1914, it was a legitimate article of interstate commerce; the statutes then in existence having been declared to be unconstitutional, on the ground that they were discriminatory against products of other States. *Scott v. Donald,* 165 U. S. 58, 17 Sup. Ct. 265. 41 L. Ed. 632; *Vance v. Vandercook,* 170 U. S. 468, 18 Sup. Ct. 645, 42 L. Ed. 1111; *Atkinson v. Express Co.,* 94 S. C. 444, 78 S. E. 516, 48 L. R. A. (N. S.) 349; *Brennan v. Express Co.,* 106 S. C. 102, 90 S. E. 402. In the last mentioned case, the plaintiff ordered one gallon of whiskey from a dealer in Richmond, Va., on the 6th of May, 1915, which the defendant, Southern Express Company, received for transportation, and delivered to him on arrival at its destination. He ordered from the same dealer another gallon, on the 10th of May, 1915, which the defendant received and transported to Columbia, but refused to deliver it to him; and he ordered from the same dealer two more gallons on the 12th of May,

1915, the tender of which to the defendant at Richmond, was refused. The delivery of the second, and acceptance of the third consignment, were refused by the defendant, on the ground that the same would be in violation of the statute of this State, approved February 20, 1915, making it unlawful for any carrier to bring into this State and deliver to any person for his own use more than one gallon of intoxicating liquor in any calendar month. The plaintiff in that action sought to require the defendant, a common carrier engaged in interstate commerce, to deliver to him the whiskey which he ordered on the 10th of May, 1915, and to receive, transport, and deliver to him other consignments, as ordered by him. After stating the provisions of the statutes enacted in 1915, the Court used the following language:

"The first question to be decided is: Did the statute law of this State, as it stood at the date of the transactions alleged in the complaint, and at the time of the decision in the Circuit Court, which was before the prohibition law became effective, violate the Federal Constitution, by making an unlawful discrimination against liquors shipped into the State in interstate commerce? That question must be answered in the affirmative. At that time, the State recognized liquor as a legitimate article of commerce by engaging in the importation and sale of it, for profit, and there was no limit to the quantity which a citizen who patronized the dispensaries might buy and keep in his possession for personal use, and no limit to the number of purchases that might be made within any specified time. There was, therefore, clearly a discrimination made in favor of liquors bought from the dispensaries, and of persons who patronized the dispensaries. The point was squarely decided in *Scott v. Donald,* 165 U. S. 58, 17 Sup. Ct. 265, 272 (41 L. Ed. 632). * * *

"The Act of Congress of March 1, 1913, known as the Webb-Kenyon Act (Act March 1, 1913, c. 90, 37 Stat. 699 [U. S. Comp. St. 1916, sec. 8739]), does not affect the deci-

sion of the question; for, while the act does divest intoxicating liquors shipped into a State, in violation of its laws, of their interstate character, and withdraws from them the protection of interstate commerce, it evidently contemplated the violation of only valid State laws.   It was not intended to confer, and did not confer, upon any State, the power to make injurious discriminations, * * * nor the power to make unjust discriminations between its own citizens.   Substantially the same thing was said in *Scott v. Donald,* of the Wilson Act (Act August 8, 1890, 26 Stat. 313, c. 728 [U. S. Comp. St. 1916, sec. 8738]), by which Congress made liquors shipped into a State, subject to its laws after the delivery thereof to the consignee.   The principle there decided was reaffirmed in *Vance v. Vandercook,* 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100.

"It follows that the Circuit Court erred in refusing the relief prayed for.   It does not follow, however, that the relief prayed for should now be granted further than to require delivery of the second shipment, if it has not already been delivered, because, as has been stated, since the trial in the Court below, the discriminating feature of the State law has been removed by the prohibition of the sale of liquor in the State and the closing of the dispensaries, and, as the law now stands, the obtaining of liquor for personal use is regulated solely by the act of February 20, 1915."

It thus clearly appears that the sale, transportation, and delivery of the beer in question came within the protecting provisions of the Interstate Commerce Law (Act Cong. February 4, 1887, c. 104, 24 Stat. 379), which is paramount to the police power of the State.   The rule is thus stated in *Brennan v. City of Titusville,* 153 U. S. 302, 14 Sup. Ct. 832, 38 L. Ed. 719, and quoted with approval in *Crenshaw v. Arkansas,* 227 U. S. 389, 33 Sup. Ct. 294, 54 L. Ed. 565:

"Even if it be that we are concluded by the opinion of the Supreme Court of the State that this ordinance was enacted

in the exercise of the police power, we are still confronted with the difficult question as to how far an act held to be a police regulation, but which in fact affects interstate commerce, can be sustained. It is undoubtedly true that there are many police regulations, which do affect interstate commerce, but which have been and will be sustained as clearly within the power of the State; but we think it must be considered, in view of a long line of decisions, that it is settled that nothing which is a direct burden upon interstate commerce can be imposed by the State without the assent of Congress, and that the silence of Congress in respest to any matter of interstate commmerce is equivalent to a declaration, on its part, that it should be absolutely free."

"Interstate commerce, ordinarily, consists of three elements, to wit: (1) The purchasing of merchandise by a resident of one State, from a resident of another State; (2) the delivery of the articles of commerce; and (3) the transportation thereof. The purchase may be made by the buyer in person, or through a traveling salesman of the nonresident, or by an order sent by the purchaser to the nonresident." *State v. Holleyman,* 55 S. C. 207, 33 S. E. 366, 45 L. R. A. 567.

After the decision in that case was rendered, an act was passed entitled "An act to declare the soliciting of orders of offer to sell liquors or beverages containing alcohol a misdemeanor, and to provide punishment therefor." Act March 3, 1909 (26 St. at Large, p. 93).

We do not deem it necessay to cite other authorities to sustain the proposition that the sale of a legitimate article of interstate commerce is as much a part thereof as its transportation or delivery.

In the case under consideration, the sale took place before the arrival of the beer at its destination and its delivery to the consignee. We shall not argue the question whether the provisions of section 829 are sufficient to constitute a burden upon interstate commerce, as the

only interpretation of which that section is susceptible is that it creates such burden.

The fact that the beer may have been purchased by the defendant for purposes forbidden by the State statute did not destroy the interstate nature of the shipment. The rule is thus stated in *Smith v. Lafar,* 67 S. C. 491, 46 S. E. 332:

"Liquor purchased in another State, and shipped to the purchaser in this State, is not contraband, being protected as an article of interstate commerce, until it is delivered to the purchaser. *Rhodes v. Iowa,* 170 U. S. 412 (18 Sup. Ct. 664, 42 L. Ed. 1088); *State v. Holleyman,* 55 S. C. 244, 31 S. E. 622 (31 S. E. 362, 33 S. E. 366, 45 L. R. A. 567). The fact that the purchaser to whom it is consigned is engaged in the illicit sale of liquor, and purchases it for the purpose of resale, can make no difference; the liquor is none the less an article of interstate commerce."

The doctrine of comity between the States has no application in determining the question whether a State statute contravenes the Interstate Commerce Law.

Affirmed.

MESSRS. JUSTICES WATTS and GAGE concur.

MESSRS. JUSTICES HYDRICK and FRASER dissent.